Benjamin F. Cronkrite, trading as B. F. Cronkrite & Co., to the use of Levi A. Eliel *v.* William F. Trexler et al., trading as the Bryn Mawr Land Association, Appellants.

*Partnership—Dealing in lands.*

An unincorporated association organized to buy and sell lands is essentially a partnership.

*Partnership—Rule of court—Denial of partnership—Land association.*

A rule of court which provides that in actions by or against partners the partnership shall be taken to be admitted as alleged on the record, unless one of the defendants before pleading shall file an affidavit denying the existence of the partnership in relation to the subject-matter of the action, includes partnerships in particular transactions, such as in the buying and selling of land.

*Evidence—Discrediting witness—Discretion of trial judge.*

The right to discredit a witness by proof of contradictory statements without first calling his attention to them in order that he may have an opportunity to explain or reconcile them is a matter within the sound discretion of the trial judge, upon the circumstances before him. When the witness is a party his declarations out of court, as admissions, constitute independent evidence of themselves, and may be proved without first giving him an opportunity to explain.

A letter written by the plaintiff, two years before his evidence was taken, to a person who was not a party to the transaction nor interested in it, and not contradicting any statements in his testimony, nor showing an admission against the right to recover, is properly excluded when offered by defendant, to discredit plaintiff's testimony.

Argued March 28, 1898. Appeal, No. 40, Jan. T., 1898, by defendants, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1893, No. 634, on verdict for plaintiff. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit against an unincorporated land association for moneys expended and services rendered. Before BEITLER, J.

At the trial the court admitted under objection and exception portions of plaintiff's deposition as follows:

" Q. Are you the legal plaintiff in this case? If so state how the indebtedness of defendant to you was incurred. A. I am the legal plaintiff in this case. The indebtedness of the defend

ants to me was incurred under and through their employment of me to take the care and charge and management of their property at Western Springs, Cook county, Illinois, a suburb of Chicago, where the defendants owned 109 acres of land, now subdivided into lots and blocks, and called Bryn Mawr. Defendants employed me to take charge of that property, to have it surveyed and subdivided into lots; to have plats made and printed; to advertise lots in their Bryn Mawr subdivision for sale by publishing advertisements in newspapers, by sending out printed maps and circulars, by furnishing free railroad tickets to such persons as might wish to go out to examine the land, and in other ways calculated to get their property on the market. My employment also included having streets curbed and graded, and having sidewalks laid and the property improved and fitted for the inspection of purchasers, and the general care and management of that property and their interests here. They directed me from time to time, and under their direction I did and had done all those things which my employment called for, and their debt to me is for my services and disbursements in the course of that employment.

"Q. Did you render an account of the amount due you to defendants, if so, when or about was the same delivered to said defendants? A. I repeatedly rendered statements of the said account to the defendants, and they never questioned or disputed the account until after this suit was begun, but they always acknowledged it was due to me and often promised to pay it. A statement of that account, of which said exhibit 'B' is a substantial copy, was mailed to defendants about June 20, 1893.

"Q. Were you present at any meeting of the association of defendants, and if so what action was taken on the account due you? A. I was present at a meeting of the Bryn Mawr Association in Philadelphia, just before August 20, 1893, and, to the best of my recollection, on August 19, 1893, a statement of my account was before the association at that meeting. It was either the statement marked exhibit 'B,' attached to the commission, or one substantially like it. My account was discussed before that meeting and fully talked over between the defendants and me. They agreed that my charge of $500 for services was fair and moderate, and agreed to pay it, and that I was entitled to interest, as charged, on the sums I had paid out for

them. Each item was gone over and explained to the defendants by me, and they finally promised to pay the whole account. They asked for vouchers, and I told them I had receipted bills for part of the items, and would produce them, but for other items, such as that of $50.00, for railroad tickets, $10.00 for postage, the several items for exchange and some others, I never had, and could not get vouchers. They asked for copies of the newspapers which had the advertisements charged for. I told them they had some of them, and it was impossible for me to obtain them, but that every item charged for advertising was actually on their account, and that they had known and ordered and approved it at the time it was made. They finally agreed that it was so and agreed to pay the advertising as charged."

Cross interrogatories :

" Q. If you answer to the thirteenth interrogatory in chief that the items contained in exhibit ' B ' are true charges against the defendants for money disbursed on their account, then answer fully further and specifically under what authority you made such disbursements and each of them. Was the alleged authority in writing, and if so produce the same to the commissioner and have it annexed to your answer to this interrogatory. A. My employment by the defendants and my authority for making the disbursements charged in my said account was at first by word of mouth from the officers and managing committee of the defendants. They came to my office and employed me. One of their managing committee lived in Chicago. Afterward we had much correspondence about it. They wrote to me and I wrote to them about it repeatedly, and upon every important detail of it. About the time Mr. Newland wrote me the letter of August 23, 1893, attached to the commission, they examined the whole account and expressly approved all I had done and paid out, and said they would have paid me then if they had the money. By reason of the confusion and dispersion of my papers above referred to, I cannot attach the letters which passed between the defendants and myself to this deposition." [2–7]

The court refused to admit in evidence the following letter from B. F. Cronkrite, the legal plaintiff, to William S. Harvey. [8]

"CHICAGO, February 2, 1894.

"MR. W. S. HARVEY,

"46 Forrest Bldg.,

"Philadelphia, Pa.

"My Dear Sir:—Your favor of the 24th ult. and telegram of the 26th received, which was the first intimation that I had ever had of the $1,000 having been paid on my account against the Bryn Mawr Land Association. The circumstances are as follows : When I lay sick and helpless in bed, and it was a question whether I would ever recover sufficiently to be fit for business, and not responsible for my acts, Franklin L. Chase, who has been acting as my attorney since about May last, came to my bedside and induced me to assign the entire Bryn Mawr account to his partner, Mr. Eliel, pretending that it would be much the easiest and best way for me to realize. I simply obeyed as a dog would the command from his master.

" It appears that the account was placed for collection in the hands of Mr. Sallinger, of your city, and $1,000 was promptly paid him and suits instituted against various stockholders of the Bryn Mawr. I have not learned the exact date that the $1,000 was paid to Mr. Sallinger. I wired you on the 31st ult. for this information, to which I have as yet received no reply. Had this $1,000 been paid over to me at the time of its collection it would have saved me an endless amount of worry and anxiety and expense ; but this dishonest scoundrel, Mr. Chase, has never advised me of its collection, but used the money, and not satisfied with this, since you have so kindly advised me of the situation, and I have exposed him and called upon him for a settlement, he has presented me with a bill for $5,000, absorbing the $1,000, as well as the entire account of the Bryn Mawr, and pretends that I still owe him a balance of about $1,500 or $1,600. He had been paid his fees in full up to the time I was taken sick in September, and while during my illness he rendered me considerable service, $500 would have been an extravagant price for him to have charged.

" You can now see how I have again been robbed when ill and helpless and compelled by circumstances to again put trust in a human being, and then think of the position he has placed me in with you all there. Had I known that you had paid the $1,000 on account I should never have thought of attempting

to bring suits against you for the balance. On the other hand, I would have conferred with you and assisted to protect your interests at this end as far as possible, as I have always done in the past.

" This man Chase has done and is doing more in his underhanded, smooth way to provoke those representing different interests here than any other person. It has always been my aim to avoid lawsuits and to settle difficulties amicably, and there is no reason under the heavens why all this should not have been accomplished, and concerted action should have been the policy for us all to pursue.

" At the suggestion of Mr. Dibblee, Mr. Field's brother-in-law, foreclosure proceedings have been instituted against all the Western Springs Property. Since I have been able to again attend to business, I have not been idle in my attempts to protect all those interests. My friend, Mr. Hale, president of the Hale Elevator Company, went with me and introduced me handsomely to Mr. Marshall Field. With him I pleaded to have the foreclosure proceedings stopped, and explained to him that it would be ruination for many good people if it were continued. He was vexed and would not listen to me, and insisted upon my conferring with Mr. Dibblee instead of troubling him. There was much at stake, and I appealed to him with all the vigor and strength at my command to give me a hearing, and was eventually invited to tell my story, and with all the earnestness of my soul I pleaded with him and for a half hour, at the end of which time he said : ' Well, Mr. Cronkrite, what do you wish to propose ? ' I asked him to give me ninety days to raise the interest due him and the privilege of protecting each of the four tracts by paying interest upon them separately. This he refused to do, but finally said : ' Well, I will give you ninety days to get the interest together on the whole 330 acres, but it must all be paid together, and if you succeed in doing this, I am then ready to discuss with you such extension as you require on the principal.'

" It is now nearly three weeks since I saw him, and all this time I have been consulting with this scoundrel Chase, and endeavoring to make provision for the interest. I believe the Garden City interest will be raised, also the Duquesne, and if you people will only understand the situation and unite with

the others in this matter, and Mr. Withers can be brought to see that to provide for the 71 acres is the only thing to do, I am sure the entire interest then can be protected until a sale of some or portions of the property can be consummated. It is a shame to think of giving up these large interests, and of the future outcome of profit to be derived from the various interests of that property there is no question whatever. When I was in your city last July it appeared to me that there was a dissension among the stockholders in the Bryn Mawr. This ought not to be. All should be united and keep together.

"If Mr. Withers and Howard Butcher don't know by this time that I have been acting in good faith and done everything in my power to protect all interests at this end, they certainly lack ordinary business discretion and judgment.

"I have passed through hell here for the past two years, but I can say with all honesty and earnestness that if I were to pass over the same course again I fail at this time to see how I could have acted differently. The time is now past when attempting to throw responsibility and blame upon this one or that one will result in advantage to any one, and the time has come when we must all stand together.

"Your first letter to me of the 9th ult. was a criticising one. I paid no attention to certain allegations and criticisms contained in it, for I well knew you were in ignorance of the true state of affairs. Your letter of the 18th ult. was written in quite a different spirit, and your letter of the 24th sounded like your own true self. Notwithstanding I had made no explanation or reply to you in the way of information requested. You know, Mr. Harvey, and so does every man interested, that I have been straightforward and open in my course in every particular; and then there has been every possible complication and impediment thrown in my path in the most underhanded and selfish manner possible, and I have stood it all, and while I have worried myself sick over it, I have strong friends who believe in me, and I will give in to no man who attempts to drive over me roughshod, as some have done, and thereby jeopardize the interests of others who have confided their interests in my keeping. Kindly make known the true situation to all concerned.

" Stop any possible remittance on my account to Sallinger
Try and have reason and justice prevail among your people.

" I trust Howard is convalescent.  I wrote him a letter of
sympathy when I first returned to my office from my illness
several weeks ago, but received no reply to it.  I was ill from
September until December.  My left hand is useless to me, be-
ing left like a paralyzed limb, but I am glad to be alive and still
able to fight for the rise of my friends and myself.  I thank you
for your kind attention to my writings, by letter and wire, and
now if you will kindly forward to me the exact date that $1,000
was paid to Mr. Sallinger and ascertain, if possible, when he
sent it to Mr. Chase or Eliel, I will be grateful, and shall
attempt to give him a hard fight at this end for his dishonesty.
With best wishes, I remain cordially yours,

                                "B. F. CRONKRITE."


The defendants' points and the answers thereto were as fol-
lows :

1. Under the evidence in this case, the verdict must be for
the defendants.  *Answer :* I decline both the points presented
by the defendants. [10]

2. If the jury believe the testimony, that Cronkrite was a
member of the association, the verdict must be for the defend-
ants.  *Answer :* I decline both the points presented by the
defendants : [11]

Verdict and judgment for plaintiff for $2,578.45. · Defend-
ants appealed.


*Errors assigned* among others were (2, 8) rulings on evidence,
quoting the bill of exceptions ;  (10, 11) above instructions,
quoting them.

*Henry C. Brown* and *Joseph deF. Junkin,* with them *William
S. Price,* for appellants.

*Richard Salinger* and *Thomas R. Elcock,* for appellees.

OPINION BY MR. JUSTICE FELL, July 21, 1898 :
The rule of court which at the trial was held to relieve the
plaintiff from proof of the partnership of the defendants, pro-
vides that in actions by or against partners, the partnership

shall be taken to be admitted as alleged on the record, unless one of the defendants, before pleading, shall file an affidavit denying the existence of the partnership in relation to the subject-matter of the action.   It was not error to hold that the rule applied to this case.   The defendants were associated for the purpose of buying and selling land.   They were sued as " trading as the Byrn Mawr Land Association," and were so described both in the writ and in the statement of claim filed. They were in fact, as to the enterprise in which they were engaged, partners, and were sued as such.   An unincorporated association organized to buy and sell lands is essentially a partnership: Kramer v. Arthurs, 7 Pa. 165; Thomson's Estate, 153 Pa. 332.   The purpose of the rule is to relieve parties from the burden of making formal proof of matters not really in dispute, and that it was intended to include partnerships in particular transactions appears from the requirements that there shall be a denial of " the existence of the partnership in relation to the subject-matter of the action."

The letter of the plaintiff which was offered in evidence and excluded, was written by him two years before the deposition was taken, and to a person who was not a party to the transaction or interested in it.   The right to discredit a witness by proof of contradictory statements without first calling his attention to them in order that he may have an opportunity to explain or reconcile them is a subject on which our decisions have not always been uniform, but it is now settled by the later cases that the question is one of sound discretion in the judge trying the case, upon the circumstances before him: Walden v. Finch, 70 Pa. 460 ; Rothrock v. Gallaher, 91 Pa. 108.   In Bru baker v. Taylor, 76 Pa. 83, and Kreiter v. Bomberger, 82 Pa. 59, it is said that a different rule applies when the witness is a party, and that then his declarations out of court, as admissions, constitute independent evidence of themselves, and may be proved without first giving him an opportunity to explain.   But under this rule the letter was not admissible, as it contained nothing in the nature of an admission against the plaintiff's claim.   In it he wrote that if he had known that a payment had been made on account he would not have brought suit.   If the fact of a payment having been made had been in dispute, the letter would have been evidence, but credit had been given for

the payment in the statement of claim, and there was no controversy about it.   As the letter neither contradicted any statement in the deposition nor showed an admission against the right to recover, it was properly excluded.

The judgment is affirmed.