JACOB SCHIFF AND FANNY SCHIFF, PLAINTIFFS-RE-
SPONDENTS, v. ISIDORE ALEXANDER AND BECKY
ALEXANDER, AND PHILIP SAKOLSKY AND FANNY
SAKOLSKY, DEFENDANTS-APPELLANTS.

Submitted November 6, 1924—Filed August 19, 1925.

Sale of Real Estate—Suit to Recover Deposit on Ground That
There Were Encroachments Contrary to Contract—Motion
to Strike Out Defenses—Plaintiffs' Affidavit Showed En-
croachments, Defendants' Answer Not Supported by Affi-
davits Required by Rule—Answer Examined and Stricken
Out as Sham and Frivolous—Counter-claim Stricken Out on
Same Grounds—Encroachments Apparent—Judgment For
Plaintiff.

On appeal from the Hudson County Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER
and KATZENBACH.

For the defendants-appellants, *Hershenstein & Finnerly*
(*Charles Hershenstein*, of counsel).

For the plaintiffs-respondents, *Gross & Gross* (*Isaac Gross*,
of counsel).

PER CURIAM.

This is an appeal from an order of the Hudson County Cir-
cuit Court made by Judge Ackerson, striking out the de-
fendants' answer and counter-claim and directing the enter-
ing of a final judgment.

We feel that the views entertained by us can be no better
expressed than they are in the opinion of Judge Ackerson,
which we adopt as the opinion of this court. His opinion
was as follows: "This motion is made by the plaintiffs to
strike out the answers filed herein by the defendants, upon
the ground that the denials contained in the answer to the

first and second counts of plaintiffs' complaint are sham; that the first separate defense is sham or frivolous; that the second separate defense is sham or frivolous; that the third separate defense is frivolous and that the counter-claim filed by the defendants is sham or frivolous, or both.

"The complaint seeks to recover a deposit of $2,000 paid on account of the purchase price of four certain pieces of real estate known as Nos. 638½, 640, 642 and 644 Ocean avenue, Jersey City, New Jersey, paid by the plaintiffs to the defendants under contract dated October 16th, 1923. The contract, among other things, provides as follows: 'It is understood and agreed that the buildings upon said premises are all within the boundary lines of the property as described in the deed therefor, and that there are no encroachments thereon, and that the buildings comply with municipal ordinances and regulations and the provisions of the New Jersey State Tenement House act as enforced by the state board of tenement-house supervision, to be shown by the report of the department or board enforcing the same where such ordinances, regulations and said act apply.'

"The complaint contains two counts, the first of which seeks to recover a $2,000 deposit and a $300 search and surveyor's fee, upon the ground that the buildings upon said premises are not all within the boundary lines thereon, and that the cornice of said buildings extends over into Ocean avenue one and eighty hundredths feet, and that the show windows in front of the building on each lot extend into the street or highway eighty hundredths feet, and the cellar entrances project into the street five feet, and that the frame building in the rear extends over upon the premises in question forty hundredths of a foot on the southerly end and twenty-five hundredths of a foot on the northerly end, and the claim is that the defendants cannot convey according to their contract for the above reasons.

"The answer admits the truth of the allegations of the complaint, except as to the defects above mentioned, which are denied."

"Plaintiffs' motion, however, is fully supported by affidavits, and especially by the affidavits of two surveyors, showing that the defects above mentioned, in fact, exist. The defendants, however, have not presented any affidavits or any proofs as required by rule 80 of the Supreme Court (Revision 1919), which provides: 'The answer may be struck out and judgment final may be entered upon motion and affidavits as hereinafter provided, unless the defendant, by affidavit or other proofs, shall show such facts as may be admitted by the judge hearing the motion, sufficient to entitle him to defend.'

"As the defendants have failed to submit affidavits or other proofs as to the facts set forth in their answer and counterclaim, and the plaintiffs' affidavits fully cover all of the matters mentioned in the answer and counter-claim, there is nothing else for the court to do but assume that the facts set forth by the plaintiffs' affidavits are true, and that the defendants cannot show such facts as would be sufficient to entitle them to defend. *Larner* v. *Town of Montclair*, 2 *N. J. Adv. R.* 411; *Eisele et al.* v. *Raphael*, 101 *Id.* 200.

"Now, let us see, irrespective of whether affidavits have been filed by the defendants or not, there is any merit in the three separate defenses set up in their answer and in their counterclaim.

"The first separate defense alleges that the plaintiffs waived the provisions of the contract hereinabove quoted, to the effect that the buildings should be wholly within the boundary lines of the lots, &c., and did agree to accept title to two of the houses described in the contract, subject to existing mislocations and encroachments, if any, in consideration of which defendants agreed to release plaintiffs from the obligation to take title to all four houses mentioned in the contract, and that plaintiffs are thereby estopped from asserting that they are entitled to a return of deposit moneys.

"This defense is not only fully met by plaintiffs' moving affidavits, and unsupported by any affidavits on the part of the defendants, but it is clearly frivolous.

"The defendants claim in this defense that they are not seeking to abrogate a written contract by parol, but are only pleading facts, which, if true, would raise an estoppel as against the plaintiffs because it is claimed that the plaintiffs caused the defendants to agree to sell and convey only two of the houses upon an understanding that the plaintiffs would take title to the two houses, subject to all mislocations and encroachments, upon defendant's agreement to relieve the plaintiffs of their obligation to take all four houses, and the defendants cite the case of *Gold* v. *Schneider*, reported in 2 *N. J. Mis. R.* 179, as an authority for this proposition. As already observed, the facts set forth in this separate defense are not supported by affidavit, but aside from this, the case of *Gold* v. *Schneider*, *supra*, has no application to the first defense set up in the case *sub judice* because, in the case of Gold v. Schneider, the plaintiff requested the defendant to change certain bank mortgages, which were to be upon the property when conveyed, to mortgages held by individuals, who, in compliance therewith, made the change. This was a clear case of a change of position caused by the conduct of the opposite party, which is the real test of an estoppel, and for the further reason that the defendant in the last-mentioned case was able to perform the contract as originally written, to purchase the property covered by bank mortgages. In the case *sub judice* the defendants were unable to perform the original contract, either on the day fixed in the contract for performance or at any other time. Therefore, assuming that the plaintiffs did agree to take two houses instead of four, the defendants did not change their position, because they were unable to convey the four houses according to their agreement, and the mere fact that plaintiffs were willing to take two houses instead of four did not produce a change of position on the part of the defendants to their detriment, which is an essential element of estoppel, and, furthermore, there was no consideration whatever for the plaintiffs in accepting two houses instead of four, because the statement of the defendants that they agreed to release the plaintiffs

from their obligation to take the four houses could not be a consideration, for the reason that there was no obligation on the part of the plaintiffs to take these four houses because of the defects already mentioned, hence, there was no obligation to release the plaintiffs from.

"It seems entirely clear that the defendants, by their first separate defense, are seeking to change and vary the terms of a written agreement by an oral one, which is not permissible under the authority of *Bowers* v. *Glucksman*, 68 *N. J. L.* 146; *Lippincott* v. *Bridgewater*, 55 *N. J. Eq.* 208; *Kerzner* v. *Chanin*, 118 *Atl. Rep.* 693.

"For this reason, therefore, the first separate defense should be struck out as both sham and frivolous.

"The second separate defense set forth in defendants' answer is that the plaintiffs did fail to carry out the terms of said agreement of sale and to accept title to said premises at the time stipulated, and did abandon the contract and forfeited their deposit.

"As already mentioned, the plaintiffs' moving affidavits completely deny all of these allegations, but attorneys for the defendants seem to brush this aside by asserting in their brief that no matter how full the matters in the affidavits of the plaintiffs may be, that it is not encumbent upon the defense, under the rules, to come into this court and deny the facts contained in the plaintiffs' affidavits or support their separate defense by affidavits on the part of the defense. But, unfortunately for this contention, rule 80 of the Supreme Court requires just that thing to be done. *Eisele* v. *Raphael*, *supra*.

"If this were not so, it would be a very simple matter for a defendant to come in and set up two or three defenses without any basis in point of fact, and in a busy circuit prevent the plaintiffs from recovering for many months, no matter how full and complete plaintiffs' affidavits on a motion to strike out a defense as sham and frivolous might be.

"It is pertinent to inquire by what method a judge, hearing a motion to strike out an answer, could determine whether a

defendant is entitled to defend unless the defendant submits affidavits or other proofs as required by rule 80.

"The defendants having failed to file any affidavits or submit other proofs to offset the affidavits filed by the plaintiffs to the effect that the buildings upon the premises in question are not within the boundary lines thereof, and that there are encroachments thereon, the court concludes that the buildings are not within the boundary lines, and that there is an encroachment in the rear, and this being a fact, the defendants were guilty of a breach of the contract on their part and the plaintiffs were under no duty or obligation to go any further in the matter. *Caporala* v. *Rubine,* 92 *N. J. L.* 463.

"The second separate defense must, therefore, be struck out.

"The third separate defense alleges that the buildings erected upon the land described in the agreement were erected in accordance with the laws and ordinances of the State of New Jersey, and if any windows or cellar entrances project over part of the sidewalk, that this was done by lawful municipal authority and does not whatever constitute a defect or encumbrance to the title, and that with regard to the encroachment of the gutter in the rear, the said encroachment is so immaterial and of such trifling effect that it can be disregarded.

"This defense is clearly frivolous.

"It is well to note, first, that there is no charge in the complaint that the provision in the contract against violation of municipal ordinances has been in any way violated. The charge in the complaint is that the buildings encroach upon the highway and that there is an encroachment upon the premises in question by reason of a gutter on a building in the rear, and the contract of sale expressly provides that it is understood and agreed that the buildings are all within the boundary lines of the property, and that there are no encroachments thereon. It becomes, therefore, immaterial whether the encroachments are extensive or only slight, and whether the buildings extend beyond the lines only a few

inches or many feet, for the parties to a contract clearly have the right to make such stipulations in their contract as they see fit, so long as such stipulations do not violate the law or public policy.

"The same clause as contained in this contract was construed by Vice Chancellor Bentley in the case of *Herring et al.* v. *Esposito,* 119 *Atl. Rep.* 765, where the court said that to disregard this clause of the contract would be to draw a new contract for the parties upon which their minds have never met, and that is a policy that courts have universally refrained from acting upon, and the court further says that such a case is entirely distinguishable from the rule laid down in *Van Blarcom* v. *Hopkins,* 63 *N. J. Eq.* 466; *Scheiman* v. *Bloch,* 117 *Atl. Rep.* 389, and all other cases in which this specific clause is not contained.

"Counsel for the defendants in the case *sub judice,* however, imply that the case of Herring *v.* Esposito can be distinguished from the facts of the case being considered, because they say in that case the encroachment was at least two feet and one and five-eighth inches in the rear, and that the quoted case does not deal with encroachments upon the highway, authorized by municipal authorities, and that the case being one of novel impression, the court, in the case *sub judice* is not necessarily bound by the pronouncement of the Vice Chancellor, but unfortunately this case has been followed in the law by the case of *Goldstein* v. *Ehrlick,* 2 *N. J. Adv. R.* 1166, where it is held that encroachments, even slight, are sufficient to warrant a rescission of the contract containing such a clause as above quoted.

"The third separate defense will therefore be struck out.

"The counter-claim filed by the defendants alleges that after the making of the written contract of sale, the plaintiffs instructed the defendants not to rent the premises which had just been erected, so that the said premises would be unencumbered by any tenancy, and that pursuant to such instructions and agreement the defendants refrained from renting said premises from October 16th, 1923, until about January

21st, 1924, whereby they lost the sum of $1,650, and also were obliged to place mortgages upon the property in order to be able to carry the same, and incurred a counsel fee and brokerage of $320 for so doing.

"Plaintiffs' moving affidavits completely deny all of the matters set forth in the counter-claim, and the defendants, as above stated, have not submitted any affidavits of proofs upon the subject.

"This counter-claim is not only sham, but it is frivolous, and does not set forth a cause of action.

"It is based upon the contract of sale already referred to, which under the statute was required to be in writing, and that contract provided that the rents were to be apportioned as of the day of the delivery of the deed, thus clearly indicating that the premises were to be rented, therefore, any agreement to the effect that said premises should not be rented, and made by parol, would be an attempt to vary or alter the terms of this written instrument by parol, and this, of course, could not be done. *Kerzner* v. *Chanin,* 118 *Atl. Rep.* 693.

"Counsel for the defendants in their brief, however, say that the facts contained in their counter-claim come squarely within the decision in *Gold* v. *Schneider, supra,* and that an estoppel was created against the plaintiffs. But it is clear that the doctrine of the quoted case does not apply to the situation arising in the case *sub judice.* In *Gold* v. *Schneider, supra,* the contract of sale provided that the premises should be encumbered at the time of passing title, by mortgages held by banks, and although the sellers had arranged for bank mortgages, they, at the request of the purchaser, obtained mortgages held by individuals, and when the time came for passing title, the purchaser refused to take title because the mortgages were not held by banks. And, as was very properly stated, 'a party is not allowed to take advantage of an act done, or the omission to do it, where said act or omission was designedly caused by himself.'

"In the instant case, however, the plaintiffs are not claiming as a breach of the contract that the premises were not rented, they are merely standing upon the contract as written, regardless of any question about rents, because according to the written contract there is no requirement that the premises shall not be rented, it only provides for an apportionment of rental in the event that the premises should all be rented at that time.

"The proposition which we are to determine is whether the defendants, having made a contract to sell premises, stipulating that the houses should be wholly within the boundary line of the premises, and that there should be no encroachments, should now be permitted, when it appears that the houses are not all within the boundary lines, and that there is an encroachment, to set up as a counter-claim that they made an agreement with the plaintiffs that the premises should not be rented during the *interim* between the contract and the passing of title, and thereby lose the rents that they might have otherwise made, when, if it had not been for their own breach of the written contract, no question of rentals could have arisen. If the defendants had been able to give title according to their contract, they could not, of course, claim any loss of rentals, and how can they now come in and say that although they are at fault, nevertheless, since the sale did not go through because of their fault, they are nevertheless entitled to recover rentals which they lost, because the sale did not go through as they had expected, and the counter-claim does not at any place allege that the defendants could have delivered title according to their contract, nor does it in any way excuse their breach, and the same reasoning also applies with reference to the allegations that mortgages were required to be placed upon the property to carry the same, pending the sale.

"It therefore appears that this counter-claim is both sham and frivolous and does not set forth a cause of action, and must be stricken out.

"For the reasons above stated, the answer filed by the defendants herein, including the three separate defenses and also including the counter-claim, will be stricken out and a summary judgment may be entered for the amount claimed by the plaintiffs, to wit: $2,300 with interest thereon from October 16th, 1923, and an order may be presented accordingly."

In the present appeal the question of the search fees is eliminated.

The judgment of the Hudson County Circuit Court is affirmed, with costs.