FREDERICK L. HOUGHTON ET AL. *v.* JESSE R. GRIMES ET AL.

May Term, 1926.

Present:   WATSON, C. J., POWERS, SLACK, BUTLER, and FISH, JJ.

Opinion filed November 4, 1926.

*Exceptions to Findings—Time of Filing of Transcript Determined from County Clerk's Filings—Authority of Chancellor To Extend Time for Filing Exceptions—Unincorporated Association—Agreement by Member—Conclusiveness of Chancellor's Findings of Fact—Partnership—Right of Individual Partner To Maintain Action under Certain Circumstances.*

1. Where by order of chancellor plaintiffs on petition therefor were duly granted 10 days after filing of transcript by reporter within which to file exceptions to findings of fact by chancellor, date of such filing is to be determined by filing placed on transcript by county clerk, rather than date of reporter's certificate as to correctness of transcript.

2. G. L. 2258, governing exceptions in cases tried by county court, is made to apply to causes in chancery by G. L. 1511, and authorizes chancellor to fix time for filing exceptions to findings.

3. In suit against member of unincorporated association, formed by individuals composing same for purpose of development of water power "to their mutual advantage, share and share alike," to enjoin him from proceeding in an action at law to collect certain corporate certificates of indebtedness issued to him, purchased with his knowledge and consent from money contributed to association by him, *held* that claimed agree-

ment by him not to collect such certificates, but to permit money to remain in investment until properties purchased and controlled by such corporation had been disposed of, was not established.

4. Chancellor's findings of fact must stand if there is evidence fairly and reasonably tending to support them.

5. Unincorporated association *held* to be a partnership.

6. Partner may maintain action against corporation on certificate of corporate indebtedness, purchased with partnership funds, and issued to such partner, although action be against interest of other partners.

APPEAL IN CHANCERY. Heard on pleadings and facts found by chancellor after the April Term, 1925, Windham County, *Moulton,* Chancellor. From a decree dissolving temporary injunction order and rendering judgment for defendant, the plaintiffs appealed. The opinion states the case. *Affirmed.*

*James P. Leamy* and *Wm. E. Daley* for the plaintiffs.

*A. V. D. Piper* and *Herbert G. Barber* for the defendants.

FISH, J. The question in issue is whether defendant Grimes can maintain his suit at law, brought against the Central New Hampshire Power Company of Maine in the Windham County Court, to recover the amount of certain certificates of indebtedness of said company payable to him. The plaintiffs in the instant suit are Frederick L. Houghton and a large number of individuals belonging with him to a voluntary association known as the Frederick L. Houghton and Associates, the said power company, and the Central Light and Power Company of Massachusetts.

The findings of the chancellor disclose the following facts: That the association known as the Houghton Associates was formed in 1910 for the purpose of the development of water power, and that others who were not then members were entitled to become such and to share in the profits and obligations of the association; that in 1911, the defendant, learning of the aims and purposes of the association, decided to invest therein and signed an application for the purchase of shares and at various times invested the sum of $5,000; that a certificate of membership in

the association was sent to him and he became a member thereof.

That shortly after the organization of the Houghton Associates the Central New Hampshire Power Company of Maine was formed under the laws of New Hampshire, the stock of which, with the exception of such shares as were necessary to the formation of the corporation, being owned and controlled by various members of the Houghton Associates; that the money contributed by the defendant was used, with his consent and understanding, in the purchase of certificates of indebtedness in the New Hampshire corporation, there being 15 of these in number originally issued to him, and certain other certificates thereafter which represented interest on the original investment; that these certificates were all alike in form and therein the New Hampshire corporation promised to pay the defendant the sums therein named, with interest, on November 1, 1916; that at one time it was arranged by certain members of the Houghton Associates (not including the defendant) that the holders of the certificates should cash them for an equal amount of the preferred stock of the New Hampshire corporation, and that the defendant did exchange certain, but not all, of his certificates.

That the instant suit was brought to enjoin the prosecution of certain suits at law (particularly the one in the Windham county court to collect the defendant's certificates of indebtedness), it being claimed that by an agreement between all the members of the Houghton Associates it was understood that the money should remain in the investment until the properties purchased and controlled by the Central New Hampshire Power Company of Maine could be disposed of, when the profits were to be divided. That the agreement claimed by the plaintiffs, as to allowing the money to remain in the investment and not attempting to collect it, was never made a matter of record or adopted by a by-law of the Associates; that it seemed to be a general understanding of the Brattleboro members who were in close touch with the affairs of the Associates and of the New Hampshire corporation that no money ought to be withdrawn until the properties were disposed of and the profits realized, but that no definite agreement was ever entered into, the most that could be found in reference to it being a general understanding and expectation that this was the situation. That at one time an executive committee of the Associates was elected at a meeting, of which the defendant had no notice and did not

attend, to take charge of the affairs of the Associates; that it was understood by this committee that the investment should remain in the enterprise as hereinbefore outlined, but that no vote upon the matter was recorded and no information of the situation sent the defendant. That it was apparent that while the defendant must have understood that his investment was speculative in nature he was no party to any agreement with the other members to the effect that he should not take steps to collect the money due him from the New Hampshire corporation when his certificates should mature and become payable, and that this was never a definite agreement among the members of the Associates, but rather a general expectation that no money could be withdrawn until the properties should be disposed of and the profits realized.

On a consideration of the case the chancellor ordered the injunction dissolved and directed that the defendant might pursue his remedy at law, or otherwise, for the collection of money due him under the certificates of indebtedness which he holds.

[1, 2]   It is claimed by the defendant that the only question for this Court is as to whether the decree is warranted and supported by the findings of fact. The first point made is that the exceptions were not seasonably taken to the findings. The findings were filed February 17, 1925, and no order was made as to when exceptions should be taken thereto. On February 28, the plaintiffs petitioned the chancellor to enlarge the rule by allowing them 10 days in which to file exceptions to the findings after the filing of the transcript by the reporter. The certificate of the reporter of the correctness of the transcript is dated April 4, 1925, but the filing thereon by the county clerk is of April 27, and his docket entries show the same date. The exceptions were filed May 6, and so were within the time fixed by the chancellor, he having granted the petition of the plaintiffs and extended the time 10 days from the filing of the transcript. The filing by the county clerk must be taken to be the time when the reporter filed the transcript rather than the date of her certificate. G. L. 2258, governing exceptions in cases tried by the county court is made to apply in causes in chancery by G. L. 1511 and is full authority for the action of the chancellor in fixing the time when these exceptions were to be filed.

The exceptions which the plaintiffs wish to have reviewed are to the granting of the decree to the defendant, the refusal

to grant a decree to the plaintiffs on their motion therefor, and to the findings of fact. No requests for findings were filed, but the plaintiffs took numerous exceptions to the findings as made.

[3]   The motion for a decree on the part of the plaintiffs and the principal exception taken to the findings of fact relate to the same subject-matter, namely,—as to whether the defendant was a party to an agreement that he would not collect his certificates of indebtedness. This is the determinative issue in the case. All other questions raised by the plaintiffs have received careful consideration and been found to be unimportant. They are, therefore, not discussed. The plaintiff's motion for a decree and the exceptions to the findings seek to bring before this Court such part of the record of the trial before the chancellor as will disclose the true legal situation involved in the formation and management of the Houghton Associates and the defendant's relation thereto. For this purpose a by-law of the Associates, which is in evidence, is called to our attention. It provides that the association was formed ''for the purpose of acquiring and developing certain lands, water rights, options upon lands and water rights and for the purpose of flowage, mills, properties and developments in the State of New Hampshire and elsewhere and to do all other things necessary for the development, promotion, sale, incorporation or otherwise, operating of or disposing of the same to their mutual advantage, share and share alike.''

It is urged that the defendant went into the enterprise as a speculation, and not as an investment; that at the time he joined the Associates he was advised of its aims and purposes and decided to invest his money as a speculation; that his information was received from a member of the executive committee, which committee was appointed prior to his membership in the Associates. That at the time the defendant joined the Associates its affairs were being conducted by the executive committee, which agreed that the members should convert their certificates into preferred stock in the New Hampshire corporation, which agreement, the plaintiffs say, was binding on the part of the defendant, and that he having converted a portion of his certificates into such preferred stock is estopped from refusing to convert the balance. That it appears that a profit has not accrued but that a loss has been sustained and that to allow the defendant to collect his certificates would not be ''to the mutual

advantage, share and share alike,'' of the Associates but would give the defendant a preference over the other members. That because it appears by the by-law in question that the various members were to act ''to their mutual advantage, share and share alike'' in the enterprise, and the defendant having been advised of the aims and purposes of the Associates by one of the executive committee who knew, as the plaintiffs claim, of the agreement set forth in the bill, and having applied for and received shares in the Associates, therefore, must have had knowledge of the said agreement. That the business dealings, objects and acts of the members were such that under the law they are governed by the law applicable to partnerships; and applying that law to the case they are entitled to a decree.

No question is made but what the certificates on which the defendant has brought his suit at law are his property and are due and payable by their terms. The only question which requires consideration, as we have seen, is that raised by the plaintiffs on their claim that there was an agreement between the Associates and the defendant, that he should not collect his certificates of indebtedness until the final determination of the affairs of the New Hampshire corporation. This is the foundation for the bill for an injunction and the theory on which the case was tried below. The defendant answered that he was not a member of the Houghton Associates and that his only contract with them was that expressed in his certificates of indebtedness. The chancellor found on the evidence that he was a member of the Associates but also found that he was not a party to the claimed agreement not to collect his certificates.

In support of their claim that the chancellor erred in finding that the defendant was not a party to any agreement not to collect his certificates, and his failure to find that there was an agreement among the Associates that this should not be done, the plaintiffs rely on the by-law referred to and quoted, upon the understanding of the executive committee that no money ought to be withdrawn until the properties were disposed of and the profits realized; upon the understanding of the Brattleboro members to the same effect, and upon discussions of the subject by the Associates at their meetings. It is argued that from the inception of the Houghton Associates the by-laws under which the defendant took his interest provided that the members associated themselves together ''to their mutual advantage share and share

alike''; that the members understood and acted under that clause and that the defendant was the only one who ever attempted to evade it; that the terms of the by-law in question under which the Associates organized and acted could have no other meaning than that the money invested by the members should remain until the project could be completed, or until it could be determined whether the result was a profit or a loss, and that to allow one member to have his investment sooner than another would result in a preference to him. Plaintiffs further argue that the defendant was presumed to know of the understandings and agreements of the Associates because he was advised of their aims and purposes.

[4] A careful examination of the record fails to disclose any evidence upon which it can be said that the findings of the chancellor as to the claimed agreement with the defendant are unwarranted; and they must stand if there is evidence fairly and reasonably tending to support them. *Morgan* v. *Morgan,* 82 Vt. 243, 73 Atl. 24, 137 A. S. R. 1006; *Town of Bennington* v. *Fillmore & Slade et al.,* 98 V. 405, 130 Atl. 137. On the part of the defendant our attention is called to his testimony in which he said that he had no contract in respect to his certificates of indebtedness except such as was evidenced by the certificates themselves. The claims of the plaintiffs rest more in argument than in evidence, and it hardly needs to be said in answer that neither the provisions of the by-law in question, the understanding of the Brattleboro members of the Associates and of the executive committee, the discussions among the members— any or all of these—establish such an agreement as the plaintiffs claim existed, or furnish ground for overthrowing the positive findings of the chancellor, which are decisive against the plaintiffs' claimed agreement on which they brought their bill.

[5] It is urged by the plaintiffs that the Houghton Associates is a partnership. This position is well taken. This is in accord with our own decisions, and particularly that in *Patch Mfg. Co.* v. *Capeless et al.,* 79 Vt. 1, 63 Atl. 938, where this Court said: ''At common law an unincorporated association as regards its rights and liabilities, is fundamentally a large partnership. The relation of the members composing it is to each other and to the outside world, that of partners.'' The case of *Walker* v. *Wait et al.,* 50 Vt. 668, is also strikingly in point on this subject. Here a voluntary association, composed of many members, adopt-

ing by-laws, having an associate name, and providing for certain officers and prescribing their duty was but a partnership in the eyes of the law. Other Vermont cases more or less in point to the effect that the Houghton Associates were partners are *Kellogg* v. *Griswold*, 12 Vt. 291; *Griffith & Co.* v. *Buffam & Ainsworth*, 22 Vt. 181, 54 A. D. 64; *Brigham* v. *Dana*, 29 Vt. 1; *Cook* v. *Carpenter & Cook*, 34 Vt. 121, 80 A. D. 670; *Chapman et al.* v. *Devereux et al.*, 32 Vt. 616. See, also, 5 Corpus Juris, 1335; *Machinists' Nat'l Bank* v. *Dean*, 124 Mass. 81; *Cronkrite* v. *Trexler et al.*, 187 Pa. 100, 41 Atl. 22; *Sullivan* v. *Sullivan*, 122 Wis. 326, 99 N. W. 1022; *Ashley* v. *Dowling et al.*, 203 Mass. 311, 89 N. E. 434, 133 A. S. R. 296; 30 Cyc. 352 (A); *Meehan* v. *Valentine*, 145 U. S. 611, 36 L. ed. 835, 12 Sup. Ct. 972.

[6]    The plaintiffs assume that if the Houghton Associates are partners the suit at law cannot be maintained. In this they are mistaken. There are two reasons why partners cannot ordinarily sue one another in a court of law, one a technical one which forbids a party from being both plaintiff and defendant in the same suit, and the other a substantial one, that until all the partnership concerns are ascertained and adjusted it is impossible to know whether a particular partner be a debtor or a creditor of the firm. Story on Partnership 323. That the defendant in the suit at law—the Central New Hampshire Power Company—is a corporation having a legal existence of its own with capacity to sue and be sued we may assume would be a sufficient answer to the technical objection referred to; but the contract on which the defendant has sued is an express contract, where the right to recover between partners in a court of law has been recognized by the best of authorities. The case of *Townsend et al.* v. *Goewey*, 19 Wend. (N. Y.) 424, 32 A. D. 514, is a leading one on this subject. This was a suit at law which was brought to recover for a subscription of a member in a joint stock association in which the court found the members to be copartners. In the opinion the court said: "It is true, that the law will not imply a promise from one partner to another in respect to their common concerns. * * * But I am not aware of anything in this relation which precludes them from making a valid express contract *inter se*, and in respect to any branch of their partnership business if they choose. Several examples of this are given in the books. It was held that though a partner in a joint stock company go on and perform services and expend money as an agent in its

formation, he shall not have an action at law to recover it, even though the company in contemplation were never actually formed. Both plaintiff and defendant were shareholders, having subscribed the articles. The defendant was chairman. Yet Abbott, Ch. J. said: 'If he (the defendant) had given any personal undertaking to pay the expenses incurred by the plaintiff, that might entail a liability upon him.' * * * Accordingly in *Venning* v. *Leckie,* 13 East. 7, the defendant having agreed with the plaintiff his partner to take one-half share of certain flax bought by the plaintiff on joint account, and to furnish the plaintiff with one-half the amount, in time for the payment thereof, in case he should require it, the K. B. held the plaintiff might recover at law on this promise. Ld. Ellenborough, Ch. J., said: 'There are many deeds of copartnership in which the partners covenant each to advance a certain sum at first, and can it be said that no action would lie by one to enforce that covenant against another, because there are accounts between them afterwards, which require unraveling in a court of equity?' LeBlanc, J. said: 'The respective sums were to be paid by each before there could be any account of profit or loss between them as partners upon the goods.' In *Neale* v. *Turton,* 4 Bing. 149, Best, Ch. J., admitted that if one partner were to draw on other partners by name, and they were individually to accept, he might recover against them, because by such acceptance a separate right is acknowledged to exist. And *Preston* v. *Strutton,* 1 Anst. 50, seems to have been decided on this principle. A specific promise or arrangement between partners, though in respect to a part of the common fund, therefore, takes it out of the general account in equity, and makes it the subject of an action at law''. In the same opinion the court calls attention to the case of *Gale* v. *Leckie,* 2 Stark. 107, as being in point. In this case one partner agreed to furnish manuscript for a work to be printed by the other, but stopped after printing 336 pages. Lord Ellenborough held that the defendant had no right to break off from the contract arbitrarily, and that assumpsit would lie for its breach.

The cases of *Venning* v. *Leckie* and *Gale* v. *Leckie, supra,* are cited with approval in *Williams* v. *Henshaw,* 11 Pick. 79, at page 83 (22 A. D. 366), where the Supreme Judicial Court of Massachusetts says: ''So if one partner covenants or agrees to advance a certain portion of the capital, or to perform any other specific acts, an action will lie for a violation of these express

contracts, even during the continuance of the partnership.'' This action was brought in assumpsit to recover the amount of one-half of a loss on a partnership adventure.

The question is not before us, and we do not decide, whether the defendant could have maintained a suit at law against the Houghton Associates had they been the obligors, and not the Central New Hampshire Power Company, in the certificates of indebtedness. It is enough for the purposes of this case that he can maintain the action at law against the New Hampshire corporation.

The cases cited are full authority in favor of the right of the defendant to pursue his suit at law, even though he is a partner in the Houghton Associates. The right to enforce a special contract between partners in a court of law has usually come in question where the copartnership has sought to recover of one of its members, but there can be no difference in principle where the action is by one of the members against the interest of the others.

*Decree affirmed with costs and cause remanded.*

This case was originally assigned to Mr. Justice TAYLOR and on his decease was reassigned to Mr. Justice FISH.