EDWARD O'TOOLE, PLAINTIFF, v. ROBERT O'TOOLE AND SALLY E. O'TOOLE, DEFENDANTS.

Decided January 23, 1932.

For the plaintiff, *Bernard M. Degheri.*

For the defendants, *Richard Doherty.*

ACKERSON, S. C. C. This action is brought by Edward O'Toole, as the alleged holder, through endorsement of a promissory note for $3,000, against the defendants as the joint makers thereof, which note was given to the payee, The Robert O'Toole Company, Incorporated, by the defendant Robert O'Toole as his contribution to the capital of a partnership formed by himself and the said The Robert O'Toole

Company, Incorporated, pursuant to a written agreement attached to and made a part of the complaint herein.

The defendants have filed a joint answer admitting that the note has not been paid, but denying that the same was endorsed over to the plaintiff and that he is the holder thereof, and setting up three "separate defenses." Appended to the answer is a notice, pursuant to rule 40 of this court, that defendants reserve the right, at the trial or prior thereto, to apply to the court for an order: (1) Dismissing the action on the ground that it is not properly cognizable by a court of law; (2) transferring the issue to the Court of Chancery.

The matter now comes before me upon a motion to strike out this answer and the separate defenses upon several grounds, some of which will now be considered.

The only reason advanced for striking out the answer proper, as distinguished from the separate defenses, is that it is sham. The only material issues raised thereby are whether the payee of the note endorsed the same to the plaintiff, and whether it is now the property of the plaintiff.

This is the second time that this case has been before me upon motion, and no affidavits have been submitted this time by either side, so far as I can find, except certain depositions heretofore taken before a Supreme Court commissioner upon a rule to show cause why a default judgment against the defendants should not be opened, which depositions are offered by consent of counsel in lieu of the usual affidavits. There is nothing in them, however, to either affirm or deny endorsement to or ownership by the plaintiff, and we are left entirely to conjecture. These are essential elements of the plaintiff's complaint, and rule 81 of this court requires the plaintiff's cause of action to be verified by affidavit upon a motion to strike the answer thereto as sham. If this had been done, the defendants' failure to offer affirmative proof upon the subject would have entitled the plaintiff to have this part of the answer stricken out for the reason claimed. *Schiff* v. *Alexander,* 130 *Atl. Rep.* 133. Under the circumstances, however, this cannot be done.

Passing for the moment the "first separate defense," let us take up the "second separate defense." We find that it charges in substance that The Edward O'Toole Company, Incorporated, sometime after the making and delivery of the note in question, did "wrongfully, forcibly and in violation of the terms and provisions" of the partnership agreement, "remove, exclude and continue to exclude the defendant Robert O'Toole from the partnership business, depriving him of all benefits and profits therefrom, and thereby causing a partial failure of the consideration for the making of the note, of all of which the plaintiff had notice before he became the holder of said note."

One of the reasons advanced for striking out this defense is that it is frivolous, and discloses no defense to this action, and it is argued that the facts and circumstances set forth in said defense constitute no failure of the true consideration for said note.

The partnership agreement provided, *inter alia,* that the partners, The Edward O'Toole Company, Incorporated, and the defendant Robert O'Toole, were each to contribute $3,000, "in either cash or kind as capital to open, operate and maintain" the business. No definite term for the duration of the partnership was stated, but it was stipulated that "this contract can be terminated on the 15th day of July in any year, providing, the parties to it give each other notice that they intend to so terminate this agreement. Notice in writing must be given by either party to the other of intention to terminate his agreement of limited partnership sixty days before July 15th in any year."

The note in suit was the contribution of the defendant Robert O'Toole to the partnership business in an attempted performance of his promises under the partnership agreement, and the consideration for it was undoubtedly the reciprocal *promises* of the other partner.

I think this defense as pleaded does not set forth an instance of total or partial *failure of consideration* for the note. The theory of this defense is that, although the defendant Robert O'Toole gave a note payable in three months, as his

contribution to the capital of the firm, instead of "cash or kind," that if, before the note became due, the other partner brought about a breach of the agreement that the partnership was to continue until terminated by written notice, that this would be in a legal sense a failure or partial failure of consideration, and for that reason a defense or partial defense to this action.

It is elementary that a *promise* may be a sufficient consideration for a *promise*. And it is the *promise,* and not the performance thereof, that constitutes the consideration, except where by the terms or necessary intendment of the agreement between the parties, performance on one side is made a condition precedent to performance on the other. *U. & G. Rubber Manufacturing Co.* v. *Conrad,* 80 *N. J. L.* 286, 293; 13 *C. J.* 327.

But in the case *sub judice* it will be observed that the contributions of the partners were to be made to "open," as well as to "operate and maintain" the business, hence they were to be made at the very inception of the business while the provisions permitting the defendant, Robert O'Toole, to participate in the business and share in the profits and have the partnership continue until terminated by written notice as in said agreement provided, were to be performed thereafter as the business progressed. And it is well settled that where there are mutual promises, and the time for performance by one party may arrive before the time for performance by the other, the latter promise is an independent obligation and not a condition precedent to the former, and its non-performance does not constitute a bar to an action upon the former promise, but merely gives rise to an independent cause of action for breach of contract. *Kinney* v. *Federal Laundry Co.,* 75 *N. J. L.* 497; *U. & G. Rubber Manufactur- Co.* v. *Conrad, supra; Pinto* v. *Pulidora,* 162 *N. Y. Supp.* 736.

It seems to me, therefore, that after making its contribution to capital, the further *promises* of The Edward O'Toole Company, Incorporated, hereinbefore mentioned, were at most independent undertakings, the non-performance of

which would not constitute a failure or partial failure of the consideration for the note in question, and would not constitute a bar or partial bar to plaintiff's action thereon. Such non-performance or interference with said defendant's rights would undoubtedly give rise to a cause of action, which under the liberality allowed by section 12 of the "Practice act of 1912" (*Pamph. L.* 1912, *p.* 379) might be set up as a counter-claim, but that is not the form in which the subject is here presented. Said defendant might also institute a separate suit against the wrong-doer as upon an independent cause of action but with that we are not now concerned.

The second separate defense must therefore be stricken out as not disclosing any defense to the action.

The "first separate defense," is in substance a reiteration of the "second defense," except that the plaintiff, as a third party individually, instead of the co-partner, The Edward O'Toole Company, Incorporated, payee of the note, is charged with having "wrongfully, forcibly and in violation of all the terms and provisions" of the partnership agreement, removed and excluded the defendant Robert O'Toole from the partnership business, depriving him of all benefits and profits therefrom, and thereby causing a partial failure of conisderation for the note. The theory of this defense is the same as the one just considered—a failure or partial failure of consideration. One of the reasons urged for striking out this defense is that the facts and circumstances set forth in said defense constitute no failure of the true consideration for the said note nor any defense to the action.

What has already been said respecting the "second separate defense," is equally applicable here in so far as the defense of partial failure of consideration is concerned.

If we exclude from this alleged defense, the theory of a failure of consideration upon which it is based, and rest it only upon the alleged wrongful interference of the plaintiff, a third party, with the performance of the partnership agreement, causing a breach therof to defendant's damage, we are asserting a tort, which, of course, is not a matter of defense, and at most only could be set us as an independent cause

of action, possibly, by way of counter-claim, under section 12 of the Practice act of 1912, *supra*.

The "first separate defense" does not, therefore, set forth a proper defense to this action and will be stricken out.

The "third separate defense" alleges that there was no consideration whatever for the making of said note by the defendant Sally E. O'Toole, which fact was at all times from the signing thereof known to the plaintiff, who was not a holder in due course. It is claimed that this alleged defense is sham. Also that it discloses no ground of defense to said action.

In the depositions of Sally E. O'Toole and Robert O'Toole, offered with this motion, they both admit that she signed the note only at the request and for the accommodation of her husband, Robert O'Toole, alone. Furthermore sections 24 and 59 of the "Negotiable Instruments act" (3 *Comp. Stat., pp.* 3738, 3741), provides that: "Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party for value," and "every holder is deemed *prima facie* to be a holder in due cause." There has been no proof whatever offered to offset these presumptions and they must stand.

It appears beyond dispute that the consideration for the note in question was the promises on the part of the payee to the defendant, Robert O'Toole, as set forth in the partnership agreement between them and, although the defendant Sally E. O'Toole may have become a joint maker for the accommodation of her husband, nevertheless, it is settled that a signature for accommodation is supported by a consideration moving to the accommodated party. A party to a note who has received no value himself may, nevertheless, become liable to a holder for value. This principle is applicable alike to the maker and endorser of a note by way of accommodation. *Crothers* v. *National Bank of Chesapeake City (Md.)*, 149 *Atl. Rep.* 270; *Palhemus* v. *Prudential Realty Co.*, 74 *N. J. L* 570, 576; 3 *Comp. Stat., p.* 3738, § 29.

It is apparent, therefore, that this alleged defense is sham and should be stricken out

What has already been said seems to dispose of the questions directly raised by the plaintiff's motion but at the argument of this motion it was agreed that the questions of law reserved in the notice appended to the defendants' answer should be disposed of at this time. These questions are whether the plaintiff's complaint should be dismissed on the ground that the cause of action is not properly cognizable by a court of law, because partnership accounts are involved which can only be determined in a court of equity, or whether the cause should be transferred by this court to the Court of Chancery for the same reason.

There are two reasons why partners cannot ordinarily sue one another in a court of law; one a technical reason which forbids a party from being both plaintiff and defendant in the same suit, where that situation arises, and the other a substantial one, that until all the partnership matters are ascertained and adjusted, it is impossible to know whether a particular partner is a debtor or a creditor of the firm.

With the first of these reasons we are not now directly concerned, because whether we consider the note in question as made payable to the partnership or to one of the partners individually, nevertheless, the note has been endorsed over to a third party, and that party is now the plaintiff in this action against one of the partners. It seems settled that the technical objection against a party being both plaintiff and defendant in the same suit, is overcome by an assignment or endorsement of the claim or instrument to a third party who may sue thereon. 47 *C. J.* 950.

In any event it would appear that the note in question was made to a single partner and not to the firm. The partnership agreement, a copy of which is attached to defendants' answer, expressly provides that the business to be estsablished shall be "known as the *Chicago establishment of The Edward O'Toole Company, Incorporated,*" and that "the party of the second part" (Robert O'Toole) "agrees to surrender all his interest, claims, profits and rights in the *Chicago establishment of The Edward O'Toole Company, Incorporated,* if guilty of any fraudulent or negligent acts," &c., and said

party also agrees to let the other partner "direct the policies and business of the *Chicago establishment of The Edward O'Toole Company, Incorporated.*" It would appear, therefore, that the partnership was not to be designated by the corporate partner's name, but was to be known by the separate title of "The Chicago Establishment of the Edward O'Toole Company, Incorporated." The note was made payable to "The Edward O'Toole Company, Incorporated," and not to "The Chicago Establishment of the Edward O'Toole Company, Incorporated." Hence, even if this action had been brought by the payee of the note as the party plaintiff, the technical objection to a party being both a plaintiff and defendant in the same suit would not be involved, and therefore, it would not be involved where the real plaintiff holds the note by endorsement from such payee.

With respect to the second reason why actions involving partnerships are sometimes the subject of exclusive equitable jurisdiction as above stated, it is, of course, generally true that while partnership accounts remain unsettled, and no balance has been struck, though the partnership has been dissolved, no action at law can be maintained by one partner against another, except an action of account, nor will an action at law lie for money had and received by the firm or lent to the firm of which the plaintiff was a member, for such advance only forms an item in the partnership account, and relief must be looked for in equity. *Davis* v. *Minch,* 80 *N. J. L.* 214; *Gulick* v. *Gulick,* 14 *Id.* 578.

But it is equally true that the foregoing rule does not apply to covenants or agreements for contributions to the capital of a partnership. And so where in organizing a partnership, one partner gives his note for his share of the capital, he may be sued thereon *in assumpsit* in a court of law. The agreement to advance capital constitutes an independent undertaking distinct from the ordinary partnership business. It is not a partnership transaction involving the running accounts of the business, but rather an independent covenant which is enforceable whatever the condition of the partnership accounts may be. *Townsend* v. *Goewer,* 19 *Wend. (N.*

*Y.*) 424; *Mason* v. *Green,* 21 *N. J. L.* 562; *Williams* v. *Henshaw,* 11 *Pick.* 79 (at *p.* 83); *Houghton* v. *Grimes,* 135 *Atl. Rep.* 15; *Roache* v. *Pendergast* (1810—*Md.*), 3 *Harr. & J.* 33; *Cinnamond* v. *Greenlee,* 10 *Mo.* 578; *Whetherbee* v. *Potter,* 99 *Mass.* 354; *Halleck* v. *Streeter,* 52 *Neb.* 827; 73 *N. W. Rep.* 219; *Ridgway* v. *Kleinert* (1858—*Pa.*), 15 *Leg. Int.* 1175; *Venning* v. *Leckie,* 13 *East* 7; *Gale* v. *Leckie,* 2 *Stark.* 107; 21 *A. L. R.* 27; 30 *Cyc.* 466; 47 *C. J.* 806 *et seq.*

In *Cinnamond* v. *Greenlee, supra,* the court said: "Such a transaction" (agreement to advance capital) "does not enter into and form a part of the partnership business so as to require the interposition of a court of equity to adjust and settle the rights of several partners."

In the course of the opinion in *Townsend* v. *Goewer, supra,* the court quotes from *Venning* v. *Leckie, supra,* as follows: "There are many deeds of co-partnership in which the partners covenant each to advance a certain sum at first, and can it be said that no action would lie by one to enforce that covenant against another, because there are accounts between them afterwards, which require unraveling in a court of equity? * * * The respective sums were to be paid by each before there could be any account of profit or loss between them as partners upon the goods." This quotation is also used in *Houghton* v. *Grimes, supra.*

The case of *Venning* v. *Leckie, supra,* is cited with approval in *Williams* v. *Henshaw, supra,* where the Supreme Judicial Court of Massachusetts says: "So, if one partner covenants or agrees to advance a certain portion of the capital or to perform any other specific acts, an action will lie for a violation of these express contracts, even during the continuance of the partnership."

It seems apparent, therefore, that the plaintiff, who claims to hold the note in suit by endorsement from the payee, whether an individual partner or a firm, is entitled to sue thereon in this court of law, and that the defendant is not entitled to an order dismissing the action on the ground that it is only cognizable in equity, or transferring it to the Court of Chancery for final disposition.

It follows from what has already been said that an order must be made striking out the first, second and third separate defenses of the answer for the reasons already stated, but refusing to strike out the denial of endorsement to and ownership by the plaintiff of the note in question as contained in the answer proper, unless the attorneys on each side will stipulate for the record that the note was actually endorsed over to the plaintiff and was at the institution of this action, and now is his property (which I strongly suspect to be the actual fact), in which event the order will be to strike out the entire answer. The order will also deny defendants' aforesaid application to dismiss the action or transfer it to the Court of Chancery, and no costs will be allowed upon this motion.

In the meantime the case will be placed on the commercial calendar for the month of February, 1932, without further notice.