**HARRIS MANUFACTURING COMPANY, Plaintiff,**

v.

**Glenn J. WILLIAMS and J. W. Wilson, Individually and as Partners Trading and Doing Business Under the Firm Name, Arkansas Parquet Flooring Company, and Arkansas Parquet Flooring Company, an Arkansas Corporation, Defendants.**

Civ. A. No. 704.

United States District Court
W. D. Arkansas,
Hot Springs Division.

Dec. 31, 1957.

Owens, McHaney, Lofton & McHaney, Little Rock, Ark., Green & Brandt, Johnson City, Tenn., for plaintiff.

McMath, Leatherman & Woods, Little Rock, Ark., for defendant.

JOHN E. MILLER, District Judge.

This case was tried to the Court without a jury on October 28, 29, and 30, 1957, and at the conclusion of the trial the Court took the case under advisement in order to allow the parties time in which to file briefs in support of their respective contentions.

The briefs have been received, and the Court having considered the pleadings, evidence, and briefs of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact

**1.**

The plaintiff is a Tennessee corporation. The defendant, Glenn J. Williams, at the time of the institution of this action was a citizen and resident of the Western District of Arkansas, Hot Springs Division. The defendant, J. W. Wilson, is a citizen and resident of Texas, and is President of the Arkansas Parquet Flooring Company, a corporation.

The defendant, Arkansas Parquet Flooring Company, a partnership, was an Arkansas partnership, having its office and principal place of business in Sheridan, Arkansas, in the Eastern District of Arkansas. This partnership operated during the period from October 1, 1956, until July 1957.

The defendant, Arkansas Parquet Flooring Company, a corporation, is an Arkansas corporation, having its office and principal place of business in Sheridan, Arkansas, in the Eastern District of Arkansas.

The amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000.

**2.**

The plaintiff is engaged in the business of manufacturing and selling hardwood flooring of all types, and particularly a parquet flooring of distinctive pattern called "BondWood".

The plaintiff acquired the exclusive right and franchise to produce BondWood in the United States and its possessions by contract dated December 11, 1954, with Bauwerk, A. G., a Swiss corporation. Pursuant to said contract, Bauwerk furnished to the plaintiff the necessary machinery to produce BondWood and the formula and method for producing a mastic or adhesive for cementing the flooring to the subfloor. Bauwerk also furnished all other information and "know-how" for producing BondWood flooring and the mastic used in conjunction therewith, which mastic has been marketed by plaintiff as "Harris Mark 10 Adhesive", as made with German ingredients.

BondWood is produced by the use of two principal machines, one called a P-3 machine to cut and shape slats 4¾ inches long and ⁵⁄₁₆ inch thick, and the other called a V-3 machine to assemble the slats into blocks of flooring 19 inches by 19 inches. Each block contains 16 squares, 4¾ inches by 4¾ inches. The slats in each square are perpendicular to the slats in the adjoining square, so that each block is a checkerboard design.

The mastic or adhesive called "Harris Mark 10 Adhesive" produced and sold by plaintiff is of a type never before used in the United States for the purpose of cementing parquet flooring, and is claimed to be superior to any other mastic presently available for the purpose of cementing parquet flooring to the subfloor.

**3.**

The adhesive formula originally furnished by Bauwerk to the plaintiff provided for the use of three resins available only from a supplier in Germany.

This formula, for convenience, is called the "original formula". The three resins are compounds of several chemicals. In order to insure a domestic source of supply in emergencies and to lower its costs, if possible, the plaintiff desired to recast the formula in terms of basic ingredients available locally. By the joint efforts of Bauwerk and the plaintiff, and with the assistance of some commercial chemical companies in the United States, a second formula (hereinafter referred to as domestic mastic) was adopted with approval by Bauwerk that provided for the use of one resin commercially available in the United States, plus small amounts of four other ingredients in lieu of the three German resins. The end product of the two formulas was very similar, and in the opinion of Bauwerk and the plaintiff the three German resins, when mixed according to the formula, are the substantial equivalent of the one American resin mixed with the four additional ingredients.

However, the original formula and the domestic formula were not exactly the same. For a limited period of time the domestic mastic was produced and marketed, but after July 1956 plaintiff returned to the use of the original formula containing the German ingredients. Apparently the domestic formula was not quite as satisfactory as the original formula.

### 4.

The contract between the plaintiff and Bauwerk requires that plaintiff keep all processes, formulas, and methods of producing BondWood and mastic confidential.

The plaintiff has maintained its processes, formulas, and methods for producing BondWood and mastic confidential.

The defendant, Glenn J. Williams, was employed by the plaintiff during the period December 11, 1954, to September 8, 1956. Williams was assigned to the BondWood department and aided and assisted in setting up the machinery for producing BondWood and in installing the equipment for making mastic. Williams was employed in an executive capacity and was a trusted employee. He was furnished all available information pertaining to BondWood and Harris Mark 10 Adhesive and participated in staff meetings relating thereto. The mastic formula was given to him, and he actually mixed or supervised the mixing of the material for several months.

Information concerning the processes, formulas, and methods of producing BondWood and mastic was given to Glenn J. Williams in confidence, and Williams knew that it was given to him in confidence.

### 5.

In about March of 1956, the plaintiff and the defendant, J. W. Wilson, entered into an agreement whereby the defendant Wilson became the exclusive distributor for BondWood and mastic in the Dallas-Fort Worth, Texas, area.

The plaintiff furnished to the defendant, J. W. Wilson, large quantities of advertising materials to aid him in the distribution of BondWood and cooperated fully with the defendant Wilson in the sale and distribution of BondWood.

In April and May of 1956, at a time when the defendant, Glenn J. Williams, was in Texas to assist the defendant Wilson with a BondWood exhibit at the Dallas Home Show and at the Fort Worth Home Show, the defendant Wilson endeavored to interest the defendant Williams in the formation of a plant to produce a parquet flooring and mastic similar to the Harris products, and during said period the defendant Wilson called upon an independent flooring manufacturer, proposing that he, Wilson, would furnish a man with the know-how of producing BondWood and mastic if said independent flooring manufacturer would undertake the production of it.

During the latter part of May or early part of June, 1956, the defendant, J. W. Wilson, requested and was granted permission to visit the BondWood department at the plaintiff's plant. The defendant, J. W. Wilson knew that the BondWood department was not open for public inspection and that he was per-

mitted to visit it only because of his distributorship for the product.

When the defendant, J. W. Wilson, visited the plaintiff's plant in May or June, 1956, he again discussed with the defendant, Glenn J. Williams, a plan to produce BondWood and mastic in competition with the plaintiff.

The defendant, J. W. Wilson, knew that the plaintiff maintained its processes, formulas, and methods of manufacturing BondWood and mastic as trade secrets, and knew that the defendant, Glenn J. Williams, had acquired his knowledge of said processes, formulas, and methods in confidence as an employee of the plaintiff.

Prior to the time that the defendant, Glenn J. Williams, left the employ of plaintiff, he and the defendant, J. W. Wilson, agreed upon a plan to set up a plant in competition with the plaintiff to produce a flooring and mastic similar to Harris BondWood and Harris domestic mastic, using for that purpose a copy of plaintiff's V-3 assembly machine and the formula for producing Harris domestic mastic.

### 6.

The defendant, Glenn J. Williams, does not have the necessary training, education, or skill to compound a formula for mastic substantially identical to Harris Mark 10 Adhesive or to design an assembly machine for assembling parquet flooring similar to Harris BondWood.

Without the knowledge and information acquired in confidence as an employee of the plaintiff, the defendant, Glenn J. Williams, could not have designed the assembly machine used by the defendants in their plant at Sheridan, Arkansas.

Without the knowledge and information acquired in confidence as an employee of the plaintiff, the defendant, Glenn J. Williams, could not have compounded the formula for producing the adhesive marketed by the defendants as A. P. No. 7 Mastic.

The assembly machine used by defendants in the plant at Sheridan is substantially identical to the V-3 assembly machine of the plaintiff.

The formula for adhesive used by defendants is substantially identical to that used by the plaintiff for Harris domestic mastic.

The assembly machine used by defendants was not discovered or designed as the result of independent research, but is a simulation of plaintiff's machine.

The formula for adhesive used by the defendants was not compounded by independent research, but was based entirely on the plaintiff's formula for domestic mastic, and is a copy thereof.

It is true that a different type of mixer was used by the defendants to mix their mastic, and there was a slight difference in the proportions of ingredients and the method of mixing them. But for all practical purposes the mastic used by defendants was and is substantially the same as the domestic mastic of the plaintiff.

### 7.

The defendants have appropriated in their manufacturing endeavor all of the information and techniques acquired by the defendant, Glenn J. Williams, in trust and confidence as an employee of the plaintiff. They are using a type of paper and a type of glue similar to those used by plaintiff to bind the slats together into 19-inch square blocks of flooring. They are packaging their product in cartons identical to cartons used by plaintiff, and the cartons contain identical quantities of flooring. The instructions for laying the defendants' flooring are the same as instructions issued by plaintiff, and identical instruments are recommended for the purpose of laying the flooring.

The advertising material of defendants is patterned on the advertising material of the plaintiff, and, in instances, photographs of Harris BondWood installations are used as illustrations of defendants' product.

The defendant, Glenn J. Williams, has appropriated to his own use the plaintiff's secret formula for mastic and the plain-

tiff's secret method of assembling Bond-Wood.

The defendant, J. W. Wilson, had knowledge of the appropriation of plaintiff's trade secrets by Williams and has made use of the benefits of such appropriation.

The defendant, Arkansas Parquet Flooring Company, an Arkansas corporation, has also made use of plaintiff's trade secrets with knowledge that Williams had appropriated said trade secrets from the plaintiff.

### Discussion

At the threshold the Court is met with the contention of the defendant, J. W. Wilson, that venue is improper as to him.

The plaintiff is a Tennessee corporation. The defendant, J. W. Wilson, is a citizen and resident of the State of Texas. All other defendants are citizens and residents of the State of Arkansas.

■■ The venue in a diversity action is in the judicial district where *all* the plaintiffs or *all* the defendants reside. Title 28 U.S.C.A. § 1391. As the case now stands, if Wilson were permitted to remain as a defendant, this judicial district is not one in which all the plaintiffs or all the defendants reside. However, Wilson is not an indispensable party to this action since the liability, if any, of Wilson and Williams as partners is a tort liability, and the plaintiff may sue one or more of the partners at his election. Evans v. Thompson, D.C.W.D.Ark., 121 F.Supp. 46, 50.

Venue in this district is improper as to the defendant Wilson, and an order should be entered dismissing the complaint of the plaintiff as against the defendant, J. W. Wilson, individually.

■■ It is also well settled that a partnership has no residence aside from that of the individual partners, and therefore may be sued only in the district where all the partners reside. Hadden v. Small, D.C.Ohio, 145 F.Supp. 387, and cases cited therein. Thus the plaintiff's complaint should also be dismissed as against the defendant partnership, Arkansas Parquet Flooring Company, as a legal entity.

After dismissal as against Wilson and the partnership as an entity, the case stands as one by the plaintiff against the defendant, Glenn J. Williams, individually, and against the Arkansas Parquet Flooring Company, an Arkansas corporation. No question is raised by these defendants as to venue or as to the jurisdiction of the Court.

On the merits, the parties are in general agreement concerning the rules of law governing trade secrets, but, of course, do not agree upon the application of that law to the facts in the instant case.

The general rule is aptly summarized in the following quotation from an annotation appearing in 165 A.L.R. 1453, 1454:

> "The law is well settled that one of the implied terms of a contract of employment is that the employee will hold sacred any trade secrets or other confidential information which he acquires in the course of his employment, and that therefore an employee who has left his employment is under an implied obligation not to use trade secrets or other confidential information which he has acquired in the course of his employment, for his own benefit or that of a rival, and to the detriment of his former employer."

The Arkansas Supreme Court has recognized this rule in the cases of Witmer v. Arkansas Dailies, Inc., 202 Ark. 470, 151 S.W.2d 971, and El Dorado Laundry Co. v. Ford, 174 Ark. 104, 294 S.W. 393. In the Witmer case the court at page 476 of 202 Ark. at page 974 of 151 S.W.2d said:

> "Certain restrictions have been imposed upon employees when severing their relationship with an employer. For example, where the particular business in which he had been employed has trade secrets an employee is not permitted to set up

an independent business of a similar nature and use the trade secrets of his employer or confidential information received from his employer in the new or independent business in which he engages, but it is allowable for him to use his experience and knowledge gained during the period of his employment in his independent business."

However, the court held that the rule was inapplicable to the facts in that case.

The rule is analyzed rather fully in Franke v. Wiltschek, 2 Cir., 209 F.2d 493, 495, where the court said:

"Plaintiffs do not assert, indeed cannot assert, a property right in their development such as would entitle them to the exclusive enjoyment against the world. Theirs is not a patent, but a trade secret. The essence of their action is not infringement, but breach of faith. It matters not that defendants could have gained their knowledge from a study of the expired patent and plaintiffs' publicly marketed product. The fact is that they did not. Instead they gained it from plaintiffs via their confidential relationship, and in so doing incurred a duty not to use it to plaintiffs' detriment. This duty they have breached. * * *

"As was stated by Vann, J., in Tabor v. Hoffman, supra, 118 N.Y. 30, 36, 37, 23 N.E. 12, 13, 16 Am.St. Rep. 740:

" 'If a valuable medicine, not protected by patent, is put upon the market, any one may, if he can by chemical analysis and a series of experiments, or by any other use of the medicine itself, aided by his own resources only, discover the ingredients and their proportions. If he thus finds out the secret of the proprietor, he may use it to any extent that he desires without danger of interference by the courts. But, because this discovery may be possible by fair means, it would not justify a discovery by unfair means, such as the bribery of a clerk who, in course of his employment, had aided in compounding the medicine, and had thus become familiar with the formula. * * *

" 'The fact that one secret can be discovered more easily than another does not affect the principle. Even if resort to the patterns of the plaintiff was more of a convenience than a necessity, still, if there was a secret, it belonged to him, and the defendant had no right to obtain it by unfair means, or to use it after it was thus obtained. We think that the patterns were a secret device that was not disclosed by the publication of the pump, and that the plaintiff was entitled to the preventive remedies of the court.' "

The Court of Appeals for this Circuit in Sandlin v. Johnson, 8 Cir., 141 F.2d 660, recognized the general rule and approved the Restatement of Torts' definition of a trade secret as being "a trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it". Restatement of Torts, Sec. 757, Comment b. See also, E. L. Bruce Company v. Bradley Lumber Company, D.C.W.D.Ark., 79 F.Supp. 176, 189.

The defendants, while conceding that trade secrets are subject to protection, contend that the plaintiff has failed to prove the existence of a trade secret in the domestic mastic or in the V-3 assembly machine, and have failed to prove that defendants have copied either the mastic or the machine. Defendants also contend that plaintiff has discontinued the use of the domestic mastic and, therefore, is entitled to no relief even if it should be found that defendants have been and are copying said domestic mastic.

Plaintiff contends that the original mastic made with German ingredients

and the domestic mastic are, for all practical purposes, identical and are trade secrets which have been appropriated by defendants. It is also contended that plaintiff's V-3 assembly machine is a trade secret and has been appropriated by defendants.

■ When the facts in the instant case are considered in the light of the rules of law heretofore discussed by the Court, it is quite clear that plaintiff's original mastic, domestic mastic, and V-3 assembly machine were and all are trade secrets. It is equally evident that defendants have wrongfully appropriated and used the trade secrets pertaining to the domestic mastic and the V-3 assembly machine.

■ While it is true that defendants' mastic is not exactly the same as plaintiff's domestic mastic, and perhaps even has some slight improvements, it is in all substantial aspects the same, and is the direct result of a violation of plaintiff's trade secret by defendants. With regard to the slight changes made by defendants, the rule is stated in Restatement of Torts, Sec. 757, page 9, as follows:

"Modification or improvement of the secret by the actor. To subject a person to liability, under the rule stated in this Section, for the use of another's trade secret, there is no requirement that he use it in exactly the form in which he received it. He may be liable even if he uses it with modifications or improvements upon it effected by his own efforts. Differences in detail do not preclude liability if, substantially, the process used by the actor is derived from the other's secret in the manner stated in this Section. The liability is avoided only when the contribution by the other's secret is so slight that the actor's process can be said to be derived from other sources; although even in such a case the actor is still subject to liability for harm caused by his disclosure or possession of the secret, under the rules

stated in Secs. 757–759. The extent of the modifications or improvements made by the actor upon the other's secret may, however, affect the computation of damages or profits for which he is liable to the other."

Just as there were slight changes made in the mastic, there were also slight changes made in the assembly machine used by defendants. Here again, however, the changes were not sufficient to prevent the defendants' machine from being a substantial copy of plaintiff's machine and a violation of plaintiff's trade secret.

■ The evidence does not sustain plaintiff's contention that its original mastic and its domestic mastic are identical and that defendants have appropriated and used plaintiff's trade secret with regard to the original mastic. Plaintiff attempted to duplicate the original mastic, but was unable to do so. The following quotation from pages 44 and 45 of the deposition of Allen Harris, Jr., Vice President of the plaintiff, indicates plaintiff's lack of success in duplicating the original mastic containing certain German ingredients.

"Q. I'm speaking of the component you get from Germany, which is principally PVA with possibly something else. A. Up to this point, we haven't been able to develop a match that we feel is as good. Now there's no reason why if the German Company would divulge the exact method of manufacturing it to an American Company, then it could be able to be made in America.

"Q. Will the German Company do that? A. It will not do it.

"Q. And has any American Company been able to duplicate that German product? A. I don't know.

"Q. Have you asked them to attempt to do so? A. We have.

"Q. Have they been able to do so yet? A. Well they claim to have done it, but in our opinion we've had excellent results with the German PVA, so we just haven't changed,

even though it's costing us more money and it takes a longer time to get it.

"Q. Even though the companies you asked to reproduce the German PVA claim to have reproduced it, your use of it hasn't confirmed their claims, is that correct? A. That's right.

"Q. So you still, at extra expense and delay, use the German product? A. Right."

The evidence was insufficient to establish the identity of the German ingredients in the original mastic, necessarily making it impossible for the Court to say that the domestic mastic was identical to the original mastic containing the German ingredients. By the same token the Court cannot say that defendants' A. P. No. 7 mastic violates plaintiff's trade secret with respect to the original mastic.

■ The defendants now remaining in the case are Glenn J. Williams and the Arkansas Parquet Flooring Company, an Arkansas corporation. Glenn J. Williams, being the moving party in violating plaintiff's trade secrets is, of course, responsible for such action on his part. And the corporation, having obtained the trade secrets from Williams with notice of the fact that Williams was violating plaintiff's trade secrets, is also responsible for its actions. Colgate-Palmolive Co. v. Carter Products, 4 Cir., 230 F.2d 855, 864, certiorari denied 352 U.S. 843, 77 S.Ct. 43, 1 L.Ed.2d 59, Restatement of Torts, Sec. 757(c). In the Colgate case the court at page 865 of 230 F.2d quoted the following from another decision:

" 'The rule is well settled that secret formulas and processes, such as are claimed to be involved here, are property rights which will be protected by injunction, not only as against those who attempt to disclose or use them in violation of confidential relations or contracts express or implied, but as against those who are participating in such attempt with knowledge of such confidential relations or contract, though they might in time have reached the same result by their own independent experiments or efforts.' "

Having concluded that plaintiff's domestic mastic and the V-3 assembly machine are trade secrets and have been unlawfully appropriated by defendants, the Court reaches the remaining question of the relief to which plaintiff is entitled.

The usual relief in a case of this type is an injunction against the defendants, and an order by the Court of an accounting by defendants of the profits received by them as a result of the appropriation and use of plaintiff's trade secrets. Franke v. Wiltschek, supra; Annotation, 170 A.L.R. 449, 488.

In the instant case plaintiff contends that it is entitled to an injunction forbidding the use by defendants of the trade secrets in question and from disclosing said secrets to others. Plaintiff further contends that defendants should be enjoined from using any type of mastic having PVA as its principal ingredient, and that the defendant corporation should be ordered to destroy at least part of the two assembly machines now in its possession.

Defendants argue that plaintiff has discontinued use of the domestic mastic and is entitled to no relief insofar as the mastic is concerned. The defendants also contend that plaintiff is not entitled to an injunction with regard to the assembly machine since it was not a trade secret and was not copied by defendants.

■ The Court is not impressed with defendants' contention that plaintiff has abandoned use of the domestic mastic and, therefore, is entitled to no relief as to said item. The mere fact that plaintiff is not using the domestic mastic at the present time does not prevent said mastic from being a trade secret and does not give defendants the liberty of appropriating and using said mastic. The domestic mastic is available for plain-

tiff's use any time it desires to do so, and its failure to use said mastic at the present time does not militate against its right to have the defendants enjoined from copying said mastic and violating plaintiff's trade secret.

On the other hand, the Court is also of the opinion that plaintiff is not entitled to an injunction against the use by defendants of any mastic having PVA as its principal ingredient. Certainly if defendants in good faith could purchase a finished mastic on the open market, they would be free to use such mastic even though it might contain a PVA base.

Therefore, with regard to the mastic, plaintiff is entitled to an injunction enjoining defendants, their agents or assigns from further use of the A. P. No. 7 mastic now being used by defendant corporation, and from the use of any mastic which is based in substantial part on plaintiff's domestic mastic. Plaintiff is also entitled to an injunction enjoining defendants, their agents or assigns from disclosing the ingredients or method of preparation of the domestic mastic to any other person.

As to the assembly machine, plaintiff is entitled to an injunction enjoining defendants from further use of the two assembly machines in the possession of the defendant corporation, from the use of any machine which is based in substantial part on plaintiff's V-3 assembly machine, and from disclosing the details of the machine to any other person.

This case was tried on the question of the existence, if any, of trade secrets owned by plaintiff, and the violation, if any, of said trade secrets by defendants. The Court reserved for further hearing the question of the damages if any, to be recovered by plaintiff in the event it should be determined that defendants had appropriated and used trade secrets owned by plaintiff. Since the Court has concluded that defendants have appropriated and used plaintiff's trade secrets, it follows that the case should be set for further hearing on the question of the

damages, if any, which plaintiff is entitled to recover of and from the defendants.

The Court is also setting for further hearing the question of the proper disposition of the two assembly machines now in the possession of the defendant corporation. Plaintiff contends that it is entitled to have at least certain parts of the machines destroyed, but it may be that on further hearing the parties can agree upon the proper disposition of the machines.

### Conclusions of Law

**1.**

The Court has jurisdiction of the instant case insofar as it involves the case of the plaintiff against the defendants, Glenn J. Williams, individually, and Arkansas Parquet Flooring Company, an Arkansas corporation. Venue is improper as to J. W. Wilson and Arkansas Parquet Flooring Company (the partnership) as an entity, and plaintiff's complaint should be dismissed as to said defendants.

**2.**

The plaintiff's orginal mastic, domestic mastic, and V-3 assembly machine are each trade secrets. Plaintiff's trade secrets with regard to the domestic mastic and the V-3 assembly machine have been unlawfully appropriated and used by defendants.

Defendants have not appropriated or used plaintiff's trade secret relating to the original mastic.

**3.**

Plaintiff is entitled to an injunction enjoining defendants and their agents or assigns from further use of the A. P. No. 7 mastic (now being used by the defendant corporation), and from the use of any mastic which is based in substantial part upon plaintiff's domestic mastic.

Plaintiff is also entitled to an injunction enjoining defendants and their agents or assigns from further use of the two assembly machines now in the possession of the defendant corporation and from the use of any assembly ma-

chine which is based in substantial part upon the plaintiff's V-3 assembly machine.

Plaintiff is further entitled to an injunction enjoining defendants and their agents or assigns from disclosing to any person the details of the plaintiff's domestic mastic or of plaintiff's V-3 assembly machine.

### 4.

The case should be set down for further hearing on the question of the damages, if any, to which plaintiff is entitled, and upon the question of proper disposition of the defendant corporation's assembly machines.

A judgment in accordance with the above should be entered.