HARRIS MANUFACTURING COMPANY, Plaintiff,

v.

Glenn J. WILLIAMS, and Arkansas Parquet Flooring Company, an Arkansas Corporation, Defendants.

Civ. A. No. 704.

United States District Court
W. D. Arkansas,
Hot Springs Division.

Aug. 12, 1958.

Owens, McHaney, Lofton & McHaney, Little Rock, Ark., Bryant & Brandt, Johnson City, Tenn., for plaintiff.

McMath, Leatherman & Woods, Little Rock, Ark., for defendants.

JOHN E. MILLER, District Judge.

Originally this case was tried to the court without a jury on October 28, 29, and 30, 1957, and on December 31, 1957, the court filed its written opinion and judgment was rendered thereon. Briefly stated the court found that plaintiff's trade secrets with regard to its domestic mastic and the V-3 assembly machine had been unlawfully appropriated and used by the defendants, Glenn J. Williams and Arkansas Parquet Flooring Company, an Arkansas corporation.

The court enjoined said defendants, their agents, successors, servants, and employees from further use of two assembly machines then in the possession of the defendant corporation and from the use of any assembly machines based in substantial part upon plaintiff's V-3 assembly machine. The court further enjoined the defendants from further use of the A.P. No. 7 mastic then being used by the defendant corporation and from the use of any mastic based in substantial part upon plaintiff's domestic mastic. The judgment further provided that the case would be set for hearing on the question of the damages, if any, to which plaintiff was entitled, and upon the question of proper disposition of the defendant corporation's assembly machines. See, Harris Manufacturing Co. v. Williams, D.C.W.D.Ark., 157 F. Supp. 779, 788-789.

The case was set for hearing on July 29, 1958, and at the conclusion of the hearing the court took the case under advisement pending receipt of briefs from the parties and the deposition of a witness concerning certain records at Dallas, Texas. The briefs and a stipulation in lieu of the deposition have been received, and the case is now ready for final disposition.

Plaintiff contends very earnestly that it is entitled to recover compensatory damages in the sum of $160,287.39; punitive or exemplary damages in the

sum of $250,000; more effective injunctive relief; and the destruction of a part of defendants' assembly machine. Just as earnestly, however, defendants contend that plaintiff is entitled to none of the relief requested and particularly is not entitled to recover any damages.

The possible remedies of the injured party in a case of this nature are set out in the Restatement of Torts, Sec. 757, Comment e, as follows:

"One who has a right under the rule stated in this Section is entitled to a remedy or remedies appropriate under the circumstances. He may recover damages for past harm, or be granted an injunction against future harm by disclosure or adverse use, or be granted an accounting of the wrongdoer's profits,· or have the physical things embodying the secret, such as designs, patterns and so forth, surrendered by the wrongdoer for destruction. Moreover, he may have two or more of these remedies in the same action if the court is competent to administer them."

The court has already granted plaintiff injunctive relief, and the remaining question is whether plaintiff is entitled to recover the profits, if any, made by defendants and the damages, if any, sustained by plaintiff. See, E. L. Bruce Co. v. Bradley Lumber Co., D.C.W.D. Ark., 79 F.Supp. 176, 189; Annotation, 170 A.L.R. 449, 491.

There was no direct evidence in the case at bar that defendants made a profit from the sale of their bondwood; the only evidence on this question was that they sustained a substantial loss. With regard to compensatory damages this leaves only the question of whether the plaintiff suffered any damage by reason of defendants' appropriation of its trade secrets, and if so, the amount of said damages.

At the hearing plaintiff sought to prove that its actual damage was over $160,000, said damages consisting especially of loss of profits by plaintiff and market disruption caused by defendants' competition. In the opinion of the court plaintiff's evidence fell far short of establishing damages in such an amount. The computations made by Mr. Hinderer, a Certified Public Accountant, were based on so many assumptions that his conclusion is entirely unreliable. Moreover, his calculations did not take into account market conditions, and the effect of valid competition as opposed to competition solely by use of plaintiff's trade secrets. In this connection, plaintiff has no monopoly in this entire field and is only protected against the violation of its trade secrets by the defendants, Glenn J. Williams and Arkansas Parquet Flooring Company, an Arkansas corporation. It should also be noted that many of plaintiff's contentions are based upon actions of J. W. Wilson, individually, who is no longer a party to this action.

There was a great deal of testimony relating to the actual amount of bondwood produced by defendants prior to December 31, 1957. Plaintiff sought to prove this production by proof of the cartons and paper purchased by defendant and by a record of the deposits made by the Arkansas Parquet Flooring Company and Arkansas Parquet Flooring Company, Inc., from October 9, 1956, to December 31, 1957. The missing links in this theory of plaintiff are such as to throw great doubt on its validity. With regard to the purchases of cartons, it was established by Mr. Wilson that of the 3,079 cartons purchased from Texas Paper Company on October 19, 1956, 879 got wet and were destroyed, leaving only 2,200·to be used. It is also probable that at least a few other cartons were destroyed in the course of production and packaging of the bondwood, and there was no reliable evidence as to the inventory or probably inventory of cartons on December 31, 1957.

A similar situation exists with reference to the purchase of paper. Mr. Wilson established that the check of November 16, 1956, in the amount of $150 was an advance on the first shipment of

paper and did not in itself represent a purchase of paper. He did not remember about the check for $300 dated March 8, 1957, but did note that it would be very unlikely that the purchase price of paper would be in an even amount such as $300. Here again, there was no reliable evidence as to the inventory of paper on December 31, 1957.

As to the deposits, it was clear that many of them were advances made by Wilson and did not represent the sale of bondwood. When all these factors are considered, the court is convinced that a preponderance of the evidence supports defendants' contention that the total production of bondwood from October 1956 to December 31, 1957, was approximately 312,000 feet.

The court must keep in mind the rule that damages cannot be based upon speculation or conjecture, but that when the cause and existence of damages have been established by the evidence, recovery will not be denied merely because the damages are difficult to ascertain. See, Good Canning Co. v. London Guarantee & Accident Co., D.C.W.D. Ark., 128 F.Supp. 778, 789 (and cases therein cited); Crow v. Russell, 226 Ark. 121, 123, 289 S.W.2d 195; Midland Valley R. Co. v. Excelsior Coal Co., 8 Cir., 86 F.2d 177, 183. In the instant case, when all the evidence is considered in the light of governing law, the court is convinced that the total amount of plaintiff's compensatory damages is the sum of $20,000, and plaintiff is entitled to a judgment against defendants in said amount.

With regard to punitive or exemplary damages, such damages are not a favorite of the law, and should be granted only if defendants' actions were malicious or oppressive in character. See, Annotation, 170 A.L.R. 449, 494; 15 Am. Jur., Damages, Sec. 268. The court is of the opinion that the circumstances of this case do not call for the allowance of punitive or exemplary damages, and the court is denying plaintiff's prayer for such relief.

Plaintiff points out the difficulty confronting it in establishing a violation by defendants of the court's injunction of December 31, 1957, and requests the court to grant more effective relief, especially by enjoining defendants from using any mastic with PVA as a base. The court passed on this question in its opinion of December 31, 1957 (see 157 F.Supp. at page 788, Headnote 11), and is of the opinion that plaintiff's prayer for relief in this regard should be denied.

Plaintiff's final contention relates to the assembly machine. The record is insufficient for the court to make any specific finding on this question, and therefore the court cannot grant plaintiff the relief sought by it.

In accordance with the foregoing discussion plaintiff is entitled to a judgment against the defendants, Glenn J. Williams and Arkansas Parquet Flooring Company, an Arkansas corporation, in the sum of $20,000 as compensatory damages, but is not entitled to the remaining relief sought by said plaintiff.

A judgment in accordance with the above should be entered.