PENROD DRILLING COMPANY,
Appellant,

v.

Sam H. JOHNSON and James L.
Starnes, Appellees.

No. 24662.

United States Court of Appeals
Fifth Circuit.

Aug. 14, 1969.

Wilton H. Williams, Jr., Shreveport, La., John M. Smith, of Roberts, Smith, Roberts & Parker, Longview, Tex., Joseph W. Milner, of Blanchard, Walker, O'Quin and Roberts, Shreveport, La., for appellant.

Scott Baldwin, Jones, Jones & Baldwin, Marshall, Tex., Joseph D. Jamail, Houston, Tex., Tully Flory, III, Mount Pleasant, Tex., of counsel, for appellees.

**1218**

Before JOHN R. BROWN, Chief Judge, and BELL and THORNBERRY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This case, simple in setting but not so easy of determination, is before us as an interlocutory appeal, 28 U.S.C.A. § 1292(b). The appeal presents the single issue of whether a partnership may be sued under the special venue provisions of the Jones Act[1] in a district in which the partnership is doing business but in which neither the partnership's principal office is located nor any partner resides. It splices the main brace to state it in more realistic terms. The question is whether the cherished ward of the admiralty—a seaman, whether salt water, pure and unadulterated or of a *Sieracki-Ryan-Yaka* variety—who sustains an injury on navigable waters within or offshore of Louisiana, must, in making a Jones Act claim against the multimillion dollar shipowner-employer whose extensive operations are widely scattered over the nation, the high seas and perhaps the terrestrial globe,[2] pursue this employer in Dallas, Texas, where the dream of oceangoing vessels up the Trinity is an enticing but unrealized community hope and where the admiralty Judge must dispense his justice not from any juridical quarterdeck but from a non-nautical bench high and dry above maritime waters.

The District Court held that venue in the Eastern District (in addition to the Northern District—Dallas) was proper.[3] We affirm.

The Seamen[4] sued Shipowner in the Eastern District of Texas for damages under the Jones Act, 46 U.S.C.A. § 688. Shipowner, a partnership whose partners reside in Dallas, Texas, and whose principal office is in Dallas (see notes 2, 3, *supra*), filed a motion seeking to have the action either dismissed or transferred to the Northern District of Texas. The motion was denied by the District Judge. This Court granted a §

1. Section 688 provides:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. *Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.*" 46 U.S.C.A. § 688. (Emphasis added).

2. The shipowner conducts its business under an entity name, Penrod Drilling Company. It is a partnership composed of Lamar Hunt of Dallas, and the three trusts, the William Herbert Hunt, Nelson Bunker Hunt, and Lamar Hunt Trusts, each having a separate trustee who is also resident of Dallas. Of its 700 employees, only 25 are based in the Dallas head office. It has 25 drilling rigs, 14 of which are amphibious, and several of those are the large 16-story high structures for offshore use. At the time this case arose, Penrod's operations were concentrated in Louisiana and offshore in the Gulf. Proof from company officials established without contradiction—which was later stipulated—that the company was engaged in extensive business in the Eastern District of Texas. The activities there included building, servicing, and repairing huge offshore amphibious rigs.

3. It bears emphasis that on Shipowner's arguments, in spite of the extensive performance of drilling business in Louisiana and the express recital in the formal articles of partnership that the "business of [the] partnership shall be conducted and carried on at Shreveport, Louisiana * * *," other provisions in the articles and uncontradicted proof showing the location of the head office in Dallas preclude suit anywhere but in Dallas (Northern District).

4. One was injured on an amphibious rig on internal navigable waters in Louisiana, the other on an offshore rig some 50 miles out in the Gulf of Mexico.

1292(b) interlocutory appeal from that ruling, which appeared to be on a controlling question of law.

■ The special venue provision of the Jones Act (note 1, *supra*) reads:

"Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

It has long been settled that even though this provision reads in jurisdictional terms, it refers to venue only. Pure Oil Co. v. Suarez, 1966, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474, 1966 A. M.C. 1117; Panama R. R. Co. v. Johnson, 1924, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748. As this statute was originally enacted and interpreted, "residence" for a partnership would most certainly have been limited to the residences of the individual partners. McCullough v. Jannson, 9 Cir., 1923, 292 F. 377. But Seamen contend that the expanded concept of corporate residence for venue purposes, as set forth in 28 U.S. C.A. § 1391(c) [5], is applicable to this large business organization sued as a shipowner under the Jones Act.

At the outset, certain things warrant emphasis. First, there is no question of subject-matter jurisdiction which rests on the Jones Act, a federal statute. Second, on jurisdiction over the person there is no doubt that Shipowner had sufficient contracts with the Eastern District to be amenable to *in personam* process under F.R.Civ.P. 4(d) (3).[6] Last, for a federal statutory claim, F.R. Civ.P. 17(b) (1),[7] accords partnerships

---

5. At the time these causes of action arose, *i. e.*, the dates of the injuries, the general venue statute read as follows:

"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside.

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, except as otherwise provided by law.

(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

(d) An alien may be sued in any district.

(e) A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action.

The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.

(f) A civil action on a tort claim arising out of the manufacture, assembly, repair, ownership, maintenance, use, or operation of an automobile may be brought in the judicial district wherein the act or omission complained of occurred."

28 U.S.C.A. § 1391.

In 1966 the statute was amended, the most significant feature being the change of subds. (a) and (b) to permit suits governed by these provisions to be brought in the judicial district where the claim arose. See note 27 *infra* and accompanying text.

6. The rule provides in part:

"Service shall be made as follows:
\* \* \* \* \*
(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, [in one of the manners specified]."

F.R.Civ.P. 4(d) (3).

7. The rule provides:

"Capacity to sue or be sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall

express capacity to be sued. Of greatest importance is the fact that *jurisdiction* is in no sense in question, so this case does not involve the problem confronting the Supreme Court in United Steelworkers of America v. Bouligny, 1965, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217. There the Court held that for purposes of diversity jurisdiction an unincorporated association was not a citizen and that its citizenship was that of its individual members.

■■■ The problem comes down to the purely procedural question whether a multistate unincorporated business organization "resides" or has a "residence" for Jones Act venue purposes in a district in which it is doing business, but which is not the location of its principal office or the place where its owner-partners live. We answer this question in the affirmative. Since in that answer we draw directly on the Supreme Court's holding that corporate venue standards apply to give meaning to "residence" or similar concepts concerning unincorporated associations, we are led to the subsidiary question whether for *venue* purposes—we repeat, *venue*—there can be any recognizable difference between the unincorporated partnership and the unincorporated association. That we answer in the negative. In this binary world, that plus and minus adds up to affirmance.

A good place to start is Pure Oil Co. v. Suarez, *supra,* because it deals with this very part of the Jones Act. In that case the Supreme Court held[8] that in a suit against a corporation under the Jones Act, venue was proper in a state that was neither the state of incorporation nor the place of the principal office, but in which the corporation was doing business. This inverted form of statutory interpretation, reading the general provision of § 1391(c) into the specific provision of the Jones Act was thought justifiable in light of the liberalizing policy of § 1391(c) and the generality of the language used. Thus the word "residence" as used in the Jones Act was thought to do nothing more than refer to general doctrines of venue rules, which might change from time to time. The change might come from legislative or judicial action or a combination of both.

■■■ But the quest cannot end there. For a partnership is not a corporation, even though persuasive arguments may be made that the entity theory of partnerships has now so engulfed the aggregate theory as to make nice distinctions between the two forms of business associations almost meaningless.[9] But while the *Suarez* Court did not decide our specific question, it did accomplish a number of things. It established the principle that venue provisions of the Jones Act should receive treatment consistent with the liberal application of that legislation. Next, it recognized that the legislative addition of § 1391(c) was made

be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U.S.C., §§ 754 and 959(a)." F.R.Civ.P. 17(b).

8. The Court affirmed the decision of this Court in Pure Oil Co. v. Suarez, 5 Cir., 1965, 346 F.2d 890, 1965 A.M.C. 2138.

9. See Professor Bromberg's Comments to the Texas Uniform Partnership Act, Vernon's Ann.Tex.Rev.Civ.Stat. Art. 6132b: "The Uniform Partnership Act leans heavily toward the entity idea, which accords with business usage. * * * The only significant aggregate feature of the Act is the joint and several liability of partners (§ 15)." See also Jensen, Is a Partnership under the Uniform Partnership Act an Aggregate or an Entity?, 16 Vand.L.Rev. 377 (1963).

"to bring venue law in tune with modern concepts of corporate operations." 384 U.S. at 204, 86 S.Ct. at 1395, 16 L. Ed.2d at 476. To this end the change was held to be applicable not only to the general diversity and federal-question venue provisions, § 1391(a) and (b), but also "to all venue statutes using residence as a criterion, at least in the absence of contrary restrictive indications in any such statute." *Id.* at 205, 86 S. Ct. at 1396, 16 L.Ed.2d at 476. On that score, the Court concluded that "there is nothing to the legislative history of [the venue] provision of the Jones Act to indicate that its framers meant to use 'residence' as anything more than a referent to more general doctrines of venue rules, which might alter in the future. Id. at 205, 86 S.Ct. at 1396, 16 L.Ed.2d at 477 (footnotes omitted).

Perhaps with this liberal approach nothing more would have been needed to reach our result here. But we are spared the travail of speculating whether a small step by that Court would have meant a big leap for us unaided by any decision subsequent to *Suarez* for the recent case of Denver & R. G. W. R. R. v. Brotherhood of R. R. Trainmen, 1967, 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954, affords an adequate gravitational basis. In that case the defendant was an unincorporated association—a labor union. The Court reaffirmed that for venue purposes the defendant should be suable as an entity and recognized that the critical factor was the residence of the entity, rather than the residence of the individual members of the associa-tion. Faced with the question of where that entity "resided", the Court then proceeded to hold for the first time that an unincorporated association should be analogized to a corporation. With that it applied to the assimilated "corporation" § 1391(c), which in 1948 brought in for corporate venue any district in which the corporation was "doing business."[10] Until this decision the lower courts had been hopelessly divided on the question of where proper venue lay for an unincorporated association.[11]

The decision in the *Denver* case leads inevitably to the conclusion that if two seamen were suing an unincorporated association such as a labor union for injuries sustained in the operations of an excursion vessel owned and operated by the union as a shipowner, then venue under § 688 could properly be laid wherever that unincorporated-business-association-shipowner was doing business, for that would be one of its "residences" for venue purposes. But, is it much of a step from *Denver's* holding to a holding in the present case that this huge unincorporated business enterprise should likewise be treated as "residing" wherever "it is doing business"? That query leads to two further questions. First, is the holding in *Denver* to be broadly construed or is it to be limited to labor unions? Second, for *venue* purposes, are there any significant differences between a partnership and an unincorporated association?

■ As to the first—the scope of the holding in *Denver*—we perceive no great difficulty. Venue is primarily a ques-

---

10. The Court was careful to point out that United Steelworkers of America v. Bouligny, *supra*, dealt with diversity jurisdiction, not capacity or venue, 387 U.S. at 559–560, 87 S.Ct. at 1748, 18 L. Ed.2d at 958.

11. For cases restricting an unincorporated association's residence to its principal place of business see, *e. g.*, Brotherhood of Locomotive Firemen and Enginemen v. Graham, 1948, 84 U.S.App.D.C. 67, 175 F.2d 802, *rev'd on other grounds*, 1949, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22; McNutt v. United Gas, Coke & Chem. Workers of America, W.D.Ark., 1952, 108 F.Supp. 871; Salvant v. Louisville & N. R. Co., W.D.Ky., 1949, 83 F. Supp. 391. Among cases holding that an unincorporated association may be sued where it is doing business are: Rutland Ry. Corp. v. Brotherhood of Locomotive Eng., 2 Cir., 1962, 307 F.2d 21, *cert. denied*, 1963, 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978; Portsmouth Baseball Corp. v. Frick, S.D.N.Y., 1955, 132 F. Supp. 922; American Football League v. National Football League, D.Md., 1961, 27 F.R.D. 264.

tion of convenience for litigants and witnesses, Denver & R. G. W. R. R. Co. v. Brotherhood of R. R. Trainmen, 1967, 387 U.S. at 560, 87 S.Ct. at 1748, 18 L. Ed.2d at 958, and venue provisions should be treated in practical terms. Rutland Ry. Corp. v. Brotherhood of Locomotive Eng., 2 Cir., 1962, 307 F.2d 21, 29, cert. denied, 1963, 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978. These guidelines become especially applicable when dealing with the Jones Act.[12] To hold that labor unions will be the only unincorporated associations to be likened to corporations would be to exclude myriad other unincorporated associations, many of them very large, such as agricultural societies, co-ops, banking associations, charitable associations, news associations, and religious societies, from the sound result of the *Denver* decision. This would force the law back to the restrictive rule allowing unincorporated associations other than labor unions to be sued only at the location of their principal place of business. Not only would that be illogical, but it would subject litigants bringing suit against such associations to unfair, discriminatory burdens. Furthermore, it would run counter to the general trend to allow suits to be brought at the place liabilities are being created.[13]

On the second question, exploring the legal theory behind an unincorporated association to determine the difference between that form of enterprise and a partnership can certainly be an exercise in futility. Platitudes and generalities abound. Most are question begging. Few sharp legal boundaries appear.

■ The definition of an association given in 7 C.J.S. Associations § 1, at p. 19, is as good as any: "An 'association' is a body of persons acting together, without a charter, but upon the methods and forms used by corporations, for the prosecution of some common enterprise." In Houghton v. Grimes, 1926, 100 Vt. 99, 135 A. 15, 18, the Court said that "[a]t common law an unincorporated association, as regards its rights and liabilities, is fundamentally a large partnership." And in People v. Brander, 1910, 244 Ill. 26, 91 N.E. 59, the Court was on safe ground in simply saying that "the term 'association' is a word of vague meaning."

On the other hand, a partnership nominally has a well-defined meaning. "A partnership is an association of two or more persons to carry on as co-owners a business for profit." Uniform Partnership Act § 6(1). On the basis of this definition, one of the immediate distinctions urged by Shipowner is that an unincorporated association may be formed for some political or benevolent enterprise, while a partnership is nearly always formed to earn a profit. We think this is bad economics and, at least, incomplete law. Worse, for venue purposes the distinction is meaningless. An unincorporated association formed for the most worthy of non-profit purposes could still create liabilities where it was

---

12. The Jones Act has been given a broad and liberal construction to effectuate the beneficial purposes for which it was designed. *Cf.* Offshore Co. v. Robison, 5 Cir., 1959, 266 F.2d 769, 1959 A.M.C. 2049.

13. In footnote 3 of *Suarez* the Court quoted with approval from Transmirra Products Corp. v. Fourco Glass Co., 2 Cir., 1956, 233 F.2d 885, 887, *rev'd on other grounds*, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786:

   3. As the Court of Appeals stated in Transmirra Prods. Corp. v. Fourco

Glass Co., 2 Cir., 233 F.2d 885, 887, "The rationale of this sharp break with ancient formulae is quite obviously a response to a general conviction that it was 'intolerable if the traditional concepts of "residence" and "presence" kept a corporation from being sued wherever it was creating liabilities.'" Although this Court reversed in Fourco, supra, for reasons discussed later * * *, the validity of this general observation was in no way questioned.
384 U.S. at 204 n. 3, 86 S.Ct. at 1395 n. 3, 16 L.Ed.2d at 476 n. 3. See also note 28 *infra* and accompanying text.

doing business.[14] Extending this argument, Shipowner urges that since many unincorporated associations—especially unions—have grown so large and pervasive in their influence, the Supreme Court opted to hold them suable where they were doing business. But partnerships, too, can grow to immense proportions, as Shipowner's activities attest. It operates under an assumed name, employs over seven hundred people, owns twenty-five drilling rigs, and operates in at least three states and on the high seas. (See note 2 *supra*). Of all things, the most irrelevant is the domicile or residence of those individuals who happen to own the enterprise. It acts like a business. It acts like a big business. It is a big business.[15] The plea that partnership venue must be geared to the small neighborhood self-made business can hardly be voiced by this industrial Goliath. The problem does not arise until business activities expand geographically beyond personal residence (or principal place of business).[16]

The little case law and other authority on the problem almost all point toward treating unincorporated associations and partnerships the same for venue purposes. In Joscar Co. v. Consolidated Sun Ray, Inc., E.D.N.Y., 1963, 212 F.Supp. 634, the Court expressly held that partnerships should be treated no differently from unincorporated associations for venue purposes. To the same effect is American Football League v. National Football League, D.Md., 1961, 27 F.R.D. 264. Since the enactment of § 1391(c) in 1948, the only case based on a federal question (rather than diversity of citizenship) [17] that has considered the issue is Hadden v. Small, N.D.Ohio, 1951, 145 F.Supp. 387. In *Hadden* the Court recognized that reason and logic pointed toward holding a partnership suable where it was doing business, but stated that in its view the change should come from Congress. As pointed out earlier (notes 6, 7, *supra*), two provisions of the rules are persuasive in indicating an assimilation. F.R.Civ.P. 17(b) (1) gives "a partnership or other unincorporated association" capacity to sue and be sued in federal question cases. Rule 4(d) (3) outlines the requirements for service of process upon "a partnership or other unincorporated association." [18] In these rules the partnership is not only recognized as an entity but is assimilated into the generic term "unincorporated association." The notes of the Advisory Committee and the commentary make clear that Rule 17(b) did not change the law concerning the capacity to sue or be sued but merely codified existing case law. Rule 17(b) is based

14. Labor unions are the best example of this statement. Many were originally formed for fraternal purposes, but most of the law concerning unincorporated associations has been the result of suits against those unions.

15. The three trusts (see note 2 *supra*), presumably for minor children, own approximately 99% of the enterprise. The residence of the beneficial owners is not disclosed.

16. And if a defendant found itself in an inconvenient forum, the provisions of 28 U.S.C.A. § 1404 for change of venue are still available.

17. In considering the venue cases, Shipowner has failed to make a distinction that must be kept in mind. The cases arising on diversity jurisdiction have apparently proceeded on the reasoning that since F.R.Civ.P. 17(b) requires the court to look to state law to determine capacity to sue and be sued, state law should also determine whether an unincorporated association or partnership is an entity and has a separate residence for venue purposes. See Champion Spark Plug Co. v. Karchmar, S.D.N.Y., 1960, 180 F.Supp. 727; Harris Mfg. Co. v. Williams, W.D. Ark., 1957, 157 F.Supp. 779; Koons v. Kaiser, S.D.N.Y., 1950, 91 F.Supp. 511. These cases are not persuasive in a case like the present one, which arises under federal law.

18. Professor Wright, in his treatise on Federal Courts, lumps them together at least for some purposes by noting that the "law of venue for unincorporated associations— partnerships, labor unions, and the like, is even more complex [than that of corporations]." C. Wright, Federal Courts § 42, at 133 (1963).

primarily on *Coronado*. (United Mine Workers v. Coronado Coal Co., 1922, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975). In *Denver* the Court said: "The Coronado case dealt with capacity to be sued, not with venue, but it did legitimate suing the unincorporated association as an entity. Although that entity has no citizenship independent of its members for purposes of diversity jurisdiction, * * * we think that the question of the proper venue for such a defendant, like the question of capacity, should be determined by looking to the residence of the association itself rather than that of its individual members." [19] The Court then went on to hold: "We think it most nearly approximates the intent of Congress to recognize the reality of the multi-state, unincorporated association such as a labor union and to permit suit against that entity, like the analogous corporate entity, wherever it is 'doing business.'" [20]

This tiny step of assimilating partnerships with unincorporated associations for venue purposes is in keeping with the strong trend—judicial and legislative—toward making modern business entities amenable to suit in places where their business activities give rise to liabilities and obligations.

■ Thus, while the Venue Act of 1887 [21] severely limited venue from what it had been since 1789,[22] the trend since that time has been expansive. In 1939 the Supreme Court held that a corporation licensed to do business in a state had thereby consented to suit there.[23] Then in 1948 Congress provided in § 1391(c) for corporate venue in any of three places—where incorporated, where licensed to do business, and where doing business.[24] In 1963 Congress further expanded venue by providing that tort claims arising from the use of automobiles could be brought where the act or omission occurred.[25] In 1966, this provision restricted to automobiles was repealed [26] and now all suits [27] may be

19. 387 U.S. at 560, 87 S.Ct. at 1748, 18 L.Ed.2d at 958.

20. 387 U.S. at 562, 87 S.Ct. at 1750, 18 L.Ed.2d at 959.

21. Act of March 3, 1887, 24 Stat. 552.

22. Section 11 of the Act of Sept. 24, 1789, 1 Stat. 73, 78.

23. Neirbo Co. v. Bethlehem Shipbuilding Corp., 1939, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167.

24. 28 U.S.C.A. § 1391(c).

25. Act of Dec. 23, 1963, Pub.L. No. 88–234, 77 Stat. 473.

26. Act of Nov. 2, 1966, Pub.L. No. 89–714, § 2, 80 Stat. 1111.

27. Act of Nov. 2, 1966, Pub.L. No. 89–714, § 1, 80 Stat. 1111. The statute now provides in full:

"§ 1391. Venue generally

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

(d) An alien may be sued in any district.

(e) A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action.

The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made

brought where the cause of action arose.[28] All changes, legislative and judicial, have been designed to effectuate one purpose—to make the venue provisions serve litigants and witnesses, not to allow nice but meaningless distinctions to place stumbling blocks in their way.

Affirmed.

by certified mail beyond the territorial limits of the district in which the action is brought."
28 U.S.C.A. § 1391 (Supp.1968). See also note 5 *supra.*

**28.** Thus to § 1391(c) and the impact given it by *Suarez, supra,* on the limited venue provisions of the Jones Act must now be added the locality-of-claim standard of amended § 1391(a) and (b), see note 27 *supra.* Although enacted subsequent to the filing of these suits, the amendment, as a procedural change, is fully effective retrospectively. Denver & R. G. W. R. R. v. Brotherhood of R. R. Trainmen, *supra,* 387 U.S. at 563, 87 S.Ct. at 1750, 18 L.Ed.2d at 960. Thus, even on the most

favorable statutory reading, Dallas (the Northern District) ceases to be the exclusive place for suit. As to the injury occurring on inland waters, Louisiana is clearly available. And for offshore injury the outer Continental Lands Act may encompass Louisiana. See Rodrigue v. Aetna Cas. & Serv. Co., 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360.

This statutory development shows why we ought not to read too literally footnote 5 in *Suarez,* which rejected the argument that the Court's reading of § 1391 (c) was unacceptable because it would make the "principal place of business" standard superfluous. Change occurs. Here the 1966 *Suarez* must bend to 1967 *Denver.*